OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

```
------------------------------------
                          :
        OPINION           :
                          : No.  88-791
          of              :
                          : FEBRUARY 17, 1989
   JOHN K. VAN DE KAMP    :
    Attorney General      :
                          :
      N. EUGENE HILL      :
  Assistant Attorney General   :
                          :
----------------------------------------------------------------
```

ALBERT J. KING has requested leave to file suit in quo warranto to challenge the qualifications of Tony Silva to hold elected office in the City of Huron. The dispute arises as a result of the maintenance of two separate residences by Mr. Silva, one in the City of Kerman and one in the City of Huron.

Mr. King's request raises the issue of whether or not Mr. Silva is qualified to hold elective office in the City of Huron.

CONCLUSION

It is determined that leave to sue should be denied.

STATEMENT OF MATERIAL FACTS

Mr. Silva has been a member of the City Council of Huron since 1978. He was first selected as mayor by the members of the City Council in 1982. He was reelected to the City Council in November of 1986 and was again selected mayor by his colleagues.[1]

On or about April 5, 1983, Mr. Silva and his wife Martha purchased a home located at 11510 W. Stanislaus in the City of

---

1. The statement of facts is based upon assertions made by each party which have either been admitted or not controverted by the other party. In his declaration submitted to this office, Mr. Silva claims that when he was approximately 15 years old, his family moved to 18754 11th Street in the City of Huron.

Kerman, approximately 38 miles from the City of Huron. The Silvas subsequently filed a claim for a homeowners' property tax exemption on the property in the City of Kerman.

Sometime in July of 1983, Mr. Silva moved a 1,200 square foot mobile home trailer, complete with two bedrooms, a bath and kitchen, onto the property located at 18754 11th Street in the City of Huron. The mobile home is owned by his brother-in-law. Since October of 1983, the Silvas spend at least one to three nights a week at the mobile home in the City of Huron.

## CONTENTIONS OF THE PROSPECTIVE PARTIES

Mr. King contends Mr. Silva's residence is in the City of Kerman and not in the City of Huron. As such, he contends Mr. Silva has usurped, intruded into and unlawfully held and exercised the office of City Councilman in the City of Huron. Mr. King therefore claims Mr. Silva is in violation of Government Code section 36502, which relates to the qualifications of a city councilman.[2/]

Mr. Silva, however, declares the mobile home located in the City of Huron to be his permanent domicile. In support of his claim, Mr. Silva contends he registered to vote in 1973 and listed as his address P.O. Box 364, Huron, California. It is his contention that he is still registered to vote at this address. He also states that his driver's license from 1982 to the present lists the post office box as his address and lists his street address as 18754 11th Street, Huron, California. He asserts that the gas and electric bill for the mobile home is listed under his name and is sent to the post office box in the City of Huron. Further, he claims all of his mail is received at the Huron address.

---

2. The parties raise the propriety of realtor's counsel's participation in this matter, since he had previously advised the proposed defendant on this issue. Also at issue, is the propriety of the city attorney's representation of the proposed defendant. Further, the proposed defendant claims this matter arose as a result of an investigation by the Fresno County Sheriff's Department occurring on or about August 29, 1986, involving certain establishments, one of which was owned by the proposed realtor. These issues are, however, outside the scope of this inquiry.

ANALYSIS

I

CRITERIA FOR QUO WARRANTO

In deciding whether to grant leave to sue in quo warranto, the Attorney General considers the following factors:

1. Whether there is a substantial issue of law or fact within the scope of the Code of Civil Procedure section 803, that requires judicial resolution.

2. Whether the public interest will be served by seeking a judicial resolution of the issue.

An action in quo warranto challenging the qualifications of an office-holder may be brought only by the Attorney General or, with the Attorney General's consent, by a private party (Code Civ. Proc. §§ 803, 810). Quo warranto actions are commenced in the interest of the public to redress wrongs that injure the public (City of Campbell v. Mosk (1961) 197 Cal.App.2d 640, 650; People v. Lowden (1855) 2 Cal. Unrep. 537, 542).

Historically, the Attorney General has not granted leave to sue in quo warranto unless some "public purpose" would be served (e.g., 36 Ops.Cal.Atty.Gen. 317, 319 (1960); 29 Ops.Cal.Atty.Gen. 204, 208 (1957); 27 Ops.Cal.Atty.Gen. 225, 229 (1956); 26 Ops.Cal.Atty.Gen. 180, 190 (1955); 21 Ops.Cal.Atty.Gen. 197, 201 (1953).) The "public purpose" requirement has been viewed as requiring "a substantial question of law or fact which calls for judicial decision." (25 Ops.Cal.Atty.Gen. 237, 240 (1955).) While "it is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of facts or questions of law that should be determined by a court" (25 Ops.Cal.Atty.Gen. 332, 341 (1955); 24 Ops.Cal.Atty.Gen. 146, 151-152 (1954); 19 Ops. Cal. Atty. Gen. 87, 88 (1952); 17 Ops.Cal.Atty.Gen. 46, 47 (1951); 15 Ops.Cal.Atty.Gen. 62, 63 (1950)), the mere existence of a legal dispute does not establish that the public interest requires a judicial resolution of the dispute or that leave automatically should be granted for the proposed realtor to sue in quo warranto. In City of Campbell v. Mosk, supra, 197 Cal.App.2d 640, the court said:

"We do not believe ... that the debatable issue inevitably produces the quo warranto. Indeed, the Attorney General's exercise of discretion is posited upon the existence of a debatable issue. To hold that the mere presentation of an issue forecloses any exercise of discretion would mean, in effect, that contrary to the

holding in the <u>Lamb</u> [v. <u>Webb</u> (1907) 151 Cal. 451] case, the Attorney General could exercise no discretion. The crystallization of an issue thus does not preclude an exercise of discretion; it causes it.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"The exercise of the discretion of the Attorney General in the grant of such approval to sue calls for care and delicacy. Certainly the private party's right to it cannot be absolute; the public interest prevails. . . ." (197 Cal.App.2d at 650; 67 Ops.Cal.Atty.Gen. 151-154.)

II

ARE THERE JUSTICIABLE ISSUES ON THE QUESTION
OF PROPOSED DEFENDANT'S RESIDENCY

In reviewing the application of the realtor for leave to sue, two questions must be answered: Has the proposed realtor raised a substantial question about the qualifications of the proposed defendant to hold office? And if he has, would the public interest be served by resolution of the question?

Mr. King claims Mr. Silva is not qualified to hold office pursuant to Government Code section 36502. This office has been informed by the Council of County Governments that the City of Huron adopted a city manager form of government. Thus, the qualifications of its elected officers to hold office are determined pursuant to Government Code section 34882.

Government Code section 34882 provides:

"A person is not eligible to hold office as a member of a municipal legislative body unless he is otherwise qualified, resides in the district and both resided in the geographical area making up the district from which he is elected and was a registered voter of the city at the time nomination papers are issued to the candidate as provided for in Section 22842 of the Elections Code."

In addition, Government Code section 1770 provides, in pertinent part, as follows:

"An office becomes vacant on the happening of any of the following events before the expiration of the term:

". . . . . . . . . . . . . . . . . . . . . . . . . .

4.                                             88-791

"(e)  His ceasing to be an inhabitant of the state, or if the office be local and one for which local residence is required by law, of the district, county, or city for which he was chosen or appointed, or within which the duties of his office are required to be discharged; provided, however, that the office of judge of a municipal or justice court shall not become vacant when, as a result of a change in the boundaries of a judicial district during an incumbent's term, said incumbent ceases to be an inhabitant of the district for which he was elected or appointed to serve."

The term "resides" as used in section 34882 is not defined nor is the term "residence" as used in section 1770(e).  However,

"In determining the place of residence the following rules shall be observed:

"(a) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose.

"(b) There can only be one residence.

"(c) A residence cannot be lost until another is gained.

"(d) The residence of the parent with whom an unmarried minor child maintains his or her place of abode is the residence of such unmarried minor child.

"(e) The residence of an unmarried minor who has a parent living cannot be changed by his or her own act.
"(f) The residence can be changed only by the union of act and intent.

"(g) A married person shall have the right to retain his or her legal residence in the State of California notwithstanding the legal residence or domicile of his or her spouse."  (Gov. Code, § 244.)

The California Supreme Court has recognized that the term "residence" as used in Government Code section 244 actually means "legal residence" or "domicile."  Walters v. Weed (1988) 45 Cal.3d 1, 7; Smith v. Smith (1955) 45 Cal.2d 235, 239; Fenton v. Board of Directors (1984) 156 Cal.App.3d 1107, 1113.  We believe that definition should apply to Government Code sections 1770 and 34882.

Elections Code section 200, subdivision (a), defines the term "residence" as meaning a person's "domicile" for voting purposes. It defines the domicile of a person as that place in which his or her habitation is fixed, wherein the person has the intention of remaining, and to which, whenever he or she is absent, the person has the intention of returning. At any given time, a person may only have one domicile. (See Elec. Code, § 200, subdiv. (b).) Subdivision (c) of section 200 of the Elections Code provides, however, that the residence of a person is that place in which the persons' habitation is fixed for some period of time, but wherein he or she does not have the intention of remaining. It further provides that at any given time, a person may have more than one residence, but may not have more than one domicile.

While Mr. Silva may have established "residency" in the City of Huron, the question becomes whether or not he is domiciled in that city pursuant to Government Code sections 34882 and 1770(e).

The test for determining a person's domicile is physical presence plus an intention to make that place his permanent home. (Fenton v. Board of Directors, supra, 156 Cal.App.3d at 1116.) In applying this test, reviewing courts have looked at a number of factors in order to determine a person's domicile. ( Id.) For example, where a person votes, acts, and declarations of the party involved and a person's mailing address. (Id., citations omitted.)

To insure that everyone has a domicile at any given time, the statutes adopt the rule that a domicile is not lost until a new one is acquired. Government Code section 244(c); Walters v. Weed, supra, 45 Cal.3d 1, 7.

In the declaration submitted by Mr. Silva to this office, he declares that his extended "family" (presumably parents and siblings) has resided at 18574 11th Street in Huron since 1969. Mr. Silva declares this address to be his residence. In 1981 Mr. Silva declares he married his wife Martha and that they spent two to three nights a week at his residence in Huron. In 1983, Mr. Silva states they purchased a home in the City of Kerman, but that they still spent two to three nights a week at the residence in Huron. Mr. Silva declares that since October 1983, he and his family (presumably Martha and their two children) spent at least one to three nights a week in the mobile home owned by his brother-in-law, Joe Garcia, located at 18574 11th Street, in the City of Huron. Mr. Silva declares he considers the mobile home his permanent domicile and that his driver's license and vehicle registration lists the City of Huron as his residence. He further declares he had continuously been a registered voter in the City of Huron since 1973.

Mr. Silva cites the case of Fenton v. Board of Directors, supra, 156 Cal.App.3d 1107, in support of his position that he meets the qualifications to hold office in the City of Huron. Fenton involved the question of whether or not a member of the board of directors (Fenton) of the Groveland Community Services District was a resident of the district and qualified to hold office. Fenton owned real property on Big Oak Road in Big Oak Flat, California, which was within the boundaries of the Groveland Community Services District. Fenton also owned real property in Ferndale, California, which was approximately four miles outside the boundaries of the district. Fenton claimed a homeowner's exemption on the Ferndale property, listed her telephone number in the phone directory with the Ferndale address, and lived almost exclusively at the Ferndale address. (Id. at 1111-1112.) Fenton, however, had been registered to vote at the Big Oak Flat property address since 1950, with the exception of one year, 1977; regularly visited the Big Oak Flat property varying from at least once a day to a few times a month; considers the Big Oak Flat address as her home, and uses that address on her driver's license, vehicle registration, concealed weapons permit, and voter's registration. (Id. at 1112.)

The court upheld the trial court's finding that although Fenton had been physically residing outside of the district, she was in fact "domiciled" within the district and was therefore "residing" within the district under Government Code section 61200. (Id. at 1117-1118.) The evidence established that when she moved to the property within the district it became her domicile. Her intent, thereafter, was manifested by her declarations at trial, her actions, as manifested by her consistent listing of the property address as her residence, and the fact that she consistently returned to the property to check on its welfare, all supported the conclusion that her domicile was in fact her residence within the district. (Id.) Also, the court found the trial court did not err in considering the rebuttable presumption of a domicile pursuant to Election Code section 211, relating to a person who maintains homeowner's property tax exemption on dwelling of one of his or her residences, in order to determine Fenton's domicile. Although Fenton had previously applied for such an exception on the property outside the district, the presumption was not found to apply, because her driver's license listed a post office box address within the district as her residence address. The court held that substantial evidence supported the conclusion that the post office box address was in fact the equivalent of a residence address, considering the location was a rural area. (Id. at 1115-1116.)

The Fenton case is indeed very similar to the Silva situation. The burden of proving residence is on the party alleging it. (Catsiftes v. Catsiftes (1938) 29 Cal.App.2d 207,

210.)  In 8 Ops.Cal.Atty.Gen. 221 (1946), this office denied leave to sue in quo warranto under similar factual circumstances, finding that direct evidence of lack of intent to change residence, including the proposed defendant's declaration of his intent, outweighed circumstantial evidence connecting the proposed defendant to another residence.  The evidence as heretofore presented appears to lead to the same conclusion.  (See Fenton v. Board of Directors, supra, 156 Cal.App.3d 1107, 1117.)

In the present application, there is evidence in the Declaration of Silva to indicate substantial personal activity in and about his Kerman home or "residence."  However, there is also significant personal activity associated with the Huron residence.  While the question of domicile is a mixed question of law and fact (Fenton v. Board of Directors, supra, 156 Cal.App.3d at 1117), many factors enter into the equation, including where an individual is registered to vote and his or her address for mail (Ballf v. Public Welfare Department (1957) 151 Cal.App.2d 784, 788-89), where tax returns are filed (Johnson v. Johnson (1966) 245 Cal.App.2d 40, 44), where an automobile is registered (8 Ops.Cal.Atty.Gen. 221 (1946)), and where a homeowner's exemption or renter's credit is taken (Elec. Code § 211).  However, the critical element is that of intent.  While declarations of intent are significant, they are not determinative.  The acts must be examined as well. Mauro v. Dept. of Mental Hygiene (1962) 207 Cal.App.2d 381, 389.

An examination of all the facts presented to us indicates that Mr. Silva intended to maintain his domicile in the City of Huron.  The facts presented to us are not seriously in dispute.

In considering this application, "it is not the province of the Attorney General to pass upon the issues in controversy or to indicate whether the proposed plaintiff or defendant should, in his opinion, prevail, but rather he is to determine whether there exists a state of facts or question of law that should be determined by a court in an action in Quo Warranto."  (19 Ops.Cal.Atty.Gen. 87, 88 (1952).)

Here, as in the situation before us in 8 Ops.Cal.Atty.Gen. 221, supra, we have been provided the relevant facts.  While one party may emphasize one portion of the facts to the exclusion of other facts, they appear not to be in dispute. Here, as in our previous opinion, "[w]hen weighed against the direct evidence produced by and on behalf of the proposed defendant the showing made by the proponents is not persuasive . . ." to establish that Mr. Silva is not a resident of the City of Huron (8 Ops.Cal.Atty.Gen. 221, 223; c.f. Fenton v. Board of Directors, supra, 156 Cal.App.3d 1107).

We are also mindful of the general principle that ambiguities concerning the right to hold public office should be resolved in favor of eligibility. Helena Rubenstein Internat. v. Younger (1977) 71 Cal.App.3d 406, 418.

"We consider disqualification from public office a significant civil disability. In California, the right to hold public office has long been recognized as a valuable right of citizenship. In 1869, in People v. Washington, 36 Cal. 658, 662, our Supreme Court declared that '[t]he elective franchise and the right to hold public offices constitute the principal political rights of citizens of the several States.' In Carter v. Com. on Qualifications etc., 14 Cal.2d 179, 182 [93 P.2d 140], the court pointed out: '[T]he right to hold public office, either by election or appointment, is one of the valuable rights of citizenship . . . The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiquities are to be resolved in favor of eligibility to office . . . .'" (Italics added.) More recently, the high court, citing Carter, has termed the right to hold public office a 'fundamental right.' (Zeilenga v. Nelson, 4 Cal.3d 716, 720 [94 Cal.Rptr. 602, 484 P.2d 578]; Fort v. Civil Service Commission, 61 Cal.2d 331, 335 [38 Cal.Rptr. 625, 392 P.2d 385].) Thus, any ambiguity in a constitutional provision calling for forfeiture of an existing office and disqualification from holding public office should be resolved in favor of continued eligibility. . . ." (Helena Rubenstein Internat. v. Younger, supra, 71 Cal.App.3d at 418.)

We believe that principle should also guide us in this situation.

Historically, the Attorney General has not granted leave to sue in quo warranto unless some public purpose would be served. (67 Ops.Cal.Atty.Gen. 151, 153 (1984).) The mere existence of a legal dispute does not establish that the public interest requires a judicial resolution of the dispute or that leave automatically should be granted for the purposed relator to sue in quo warranto. (Id., at 154.) As stated in City of Campbell v. Mosk, supra, 197 Cal.App.2d 640, 650:

"The exercise of the discretion of the Attorney General in the grant of such approval to sue calls for care and delicacy. Certainly the private party's right to it cannot be absolute; the public interest prevails."

However, as stated above, under the facts and circumstances of this matter, the demonstrated intent of Mr. Silva is to remain a resident of the City of Huron. We believe that the authorization of this proceeding would not serve the public interest. For the foregoing reasons, leave to sue is denied.

* * * * *