[Civ. No. 19657. First Dist., Div. One. Dec. 4, 1961.]

CITY OF CAMPBELL, Plaintiff and Appellant, v. STANLEY MOSK, as Attorney General, et al., Defendants and Respondents.

Joseph A. Bonacina, City Attorney, for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Charles A. Barrett, Assistant Attorney General, Clayton P. Roche, Deputy Attorney General, Ferdinand P. Palla, City Attorney (San Jose), Richard K. Karren, Senior Assistant City Attorney, and Harry Kevorkian, Assistant City Attorney, for Defendants and Respondents.

TOBRINER, J.—We must determine here whether this court will command the Attorney General to grant leave to appellant City of Campbell to sue the City of San Jose in quo warranto in order to litigate the validity of San Jose's annexation of certain territory. We must define the nature of the obligation of the Attorney General to grant such leave. As we shall point out, we believe that there reposes in the Attorney General the right to exercise discretion in permitting the institution of suit in quo warranto. Only in the event of an extreme abuse will the courts intervene to set aside the result of the exercise of such discretion. We find no such abuse in the instant case.

The genesis of this matter lies in the attack of appellant City of Campbell upon the validity of respondent City of San Jose's annexation of Cherry Lane No. 1 as uninhabited terri-

tory. San Jose filed a copy of its ordinance approving annexation on September 25, 1958. On November 20, 1958, appellant petitioned the Attorney General for leave to sue San Jose on the grounds, first, that the "purported annexation . . . was null and void" because more than 12 registered voters resided in the annexed area, thus invalidating the invoked procedure, which applied to the annexation of *un*inhabited territories; and, second, that San Jose had violated a "gentlemen's agreement" between the two cities "establishing certain lines not to be crossed with annexation to either cit*ies*."

The Attorney General granted appellant conditional leave to sue in quo warranto; appellant filed a complaint charging the invalidity of the annexation on the bases noted *supra*. On April 4, 1960, the Attorney General, relying essentially upon the ground that the quo warranto action would not subserve the public interest, officially denied leave to sue and ordered appellant to dismiss its complaint. Appellant then petitioned for a "Writ of Mandate and/or Writ [of] Certiorari" to compel respondent Attorney General to grant it the desired leave to sue. Both San Jose and the Attorney General demurred on the grounds that the petition did not state a cause of action and that appellant lacked any standing to attack the annexation. The trial court sustained the demurrers without leave to amend; appellant appeals from the judgment subsequently rendered.

Two statutes define the procedures for municipal annexation of territory: the Annexation Act of 1913 (Gov. Code, §§ 35100-35158) and the Annexation of Uninhabited Territory Act of 1939 (Gov. Code, §§ 35300-35326). The first specifies the procedure for annexing inhabited territory (Gov. Code, § 35104) and provides that in the absence of a majority protest, the city council shall either put the question of annexation to a vote of the residents of the territory or terminate the proceedings by its own resolution. (Gov. Code, § 35122.) The Annexation of Uninhabited Territory Act provides that if a majority of the residents do not protest the proceedings, the city council shall by ordinance either approve or disapprove of the annexation. (Gov. Code, § 35314.) Thus the latter provision is less formal. Its application depends upon a determination that "less than twelve registered voters reside" in the area at the time the proceedings commence. (Gov. Code, § 35303.) A contrary determination would void the proceeding. (*Central Manuufacturing Dist., Inc.* v. *Board of Supervisors* (1960)

644

176 Cal.App.2d 850, 860-861 [1 Cal.Rptr. 733]; *People* v. *City of Richmond* (1956) 141 Cal.App.2d 107, 111, 119 [296 P.2d 351].)

Before examining the issue as to whether the Attorney General properly refused the leave, we must determine, first, if the City of Campbell showed a sufficient interest to support its standing to file a petition for a writ of mandate, and, second, if the finding of the City of San Jose Council that it had jurisdiction forecloses collateral attack because such finding is conclusive. We shall point out why we have resolved the first query affirmatively and the second, negatively.

 As to the first question, the City of Campbell possesses a sufficient "beneficial interest" to maintain the action. While the cases hold that a city which is itself attempting to annex the same territory "has very definite justiciable 'interests' in the controversy" (*Johnson* v. *City of San Pablo* (1955) 132 Cal.App.2d 447, 458 [283 P.2d 57]), we see no reason why the beneficial interest must be constricted to such a situation. The city adjoining the annexed area, which could have initiated the annexation proceedings, certainly has an inchoate interest in the matter.

In the instant case appellant's beneficial interest becomes manifest in the presence of the following elements: (1) the involved area was potentially subject to annexation by the City of Campbell and in such event the annexed area would have been taxable by it; (2) since annexation makes appellant territorially contingent to San Jose at the point of annexation, appellant is affected by the actions of the City of San Jose, and, with respect to such territory, appellant becomes a party interested in the enforcement of relevant state legislation; (3) appellant may legitimately assert a "beneficial interest" in the sought enforcement of the "gentlemen's agreement," prohibiting the annexation, which appellant urges San Jose contracted with it.

 As to the second question, which involves appellant's collateral attack upon the findings, we do not believe the determination by the San Jose City Council that it had jurisdiction to proceed under the Annexation of Uninhabited Territory Act of 1939 precludes the institution of quo warranto proceedings. Respondents argue that, in the absence of fraud, the city's finding must be taken to be conclusive. In *People* v. *City of Richmond, supra,* 141 Cal.App.2d 107, however, this court, speaking through Justice Fred B. Wood, confronted by a similar contention, did not hold the city's determination to

be final. There, "Richmond claim[ed] that in the absence of fraud the findings of the city council (including its finding that the territory was uninhabited) were final; that there was no proof of fraud; hence, it was incompetent for the trial court to make findings contrary to those made by the city council." (P. 116.) We stated that the "conference of power," which authorized such findings, fell "considerably short of . . . [an] exclusive character. . . ." (P. 116.) We further stated: "Even if the city had power to decide whether this territory was uninhabited, we must not forget this presents a jurisdictional question, upon which depends the very power of the city to act." (P. 117.) (See also *Central Manufacturing Dist., Inc.* v. *Board of Supervisors, supra,* 176 Cal.App.2d 850, 861.) While we recognize that, as the Attorney General suggests, the opinion also states that the city, by submitting the factual questions to the court, estopped itself from raising such a defense, we believe the court's analysis both explicit and pertinent on the issue of jurisdiction.

We conclude that appellant shows a sufficient beneficial interest to support its action for quo warranto and that appellant is not foreclosed from urging the suit on the ground that the findings of the San Jose City Council cannot be attacked. But appellant bears a further burden. ▆▆▆ Because, as we shall point out, appellant's contentions appear by way of application for quo warranto, rather than in other available proceedings, it must meet the conditions requisite to that writ. Appellant must demonstrate that the Attorney General's refusal to sue was an extreme and clearly indefensible abuse of his discretion. We shall explain why we have concluded that appellant has not sustained that burden.

While the right to the adjudication of a cause in a court of law lies deep in our concept of jurisprudence, appellant here attempted only a belated assertion of its contention. The statutory scheme for annexation itself includes built-in protections against abuse through the procedure of protest by interested owners of affected property, but in this case no protests were filed. Moreover, appellant, prior to the completion of the annexation, could have attacked the annexation by the remedy of mandate or certiorari. (*County of San Mateo* v. *City Council* (1959) 168 Cal.App.2d 220, 221 [335 P.2d 1013].) As the court stated in *Hazelton* v. *City of San Diego* (1960) 183 Cal. App.2d 131 [6 Cal.Rptr. 723] : "However, where, as here, the proceedings have been completed and the city has been and is exercising dominion over the territory annexed, the territory

becomes incorporated within the city and a corporation de facto is created and *'none but the State can call its existence in question.'* (*Tulare Irrigation Dist.* v. *Shepard,* 185 U. S. 1 [22 S.Ct. 531, 536, 46 L.Ed. 773].)'' (P. 135; emphasis added.) Quo warranto is the only procedure for testing the validity of an annexation once the proceedings have been completed. (*American Distl. Co.* v. *City Council of the City of Sausalito* (1950) 34 Cal.2d 660, 667 [212 P.2d 704, 18 A.L.R.2d 1247]; *Hazelton* v. *City of San Diego, supra,* 183 Cal.App.2d 131, 135; *Crowl* v. *Board of Trustees* (1930) 109 Cal.App. 214, 216-217 [292 P. 985]; *Coe* v. *City of Los Angeles* (1919) 42 Cal.App. 479, 482 [183 P. 822].) Having eschewed its earlier remedies appellant finds itself relegated to the special attempt to secure the quo warranto. In such an instance appellant cannot effectively complain that it has been blocked from the full adjudication of its rights merely because its late application becomes a conditional one.

The condition consists of the decision of the Attorney General that the leave to sue should be granted. That decision in turn issues in his discretion. Section 803 of the Code of Civil Procedure defines the function of the Attorney General as to quo warranto: ''An action may be brought by the attorney-general . . . upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state. And the attorney-general must bring the action, whenever he has reason to believe that any such office or franchise has been usurped . . . or when he is directed to do so by the governor.''

Apparently *Lamb* v. *Webb* (1907) 151 Cal. 451 [91 P. 102, 646] is the only California decision which discusses the role of the Attorney General pursuant to the statute in the type of situation before us. In that action against an alleged usurper of public office, the applicant contended, upon affidavit on information and belief, ''that he had been informed that certain things had occurred before the election board at the general election. . . .'' (P. 455.) The court declared that this showing did not suffice. As to the function of the Attorney General, the court said: '' [A]ssuming for the purposes of this appeal that the attorney-general's discretion under the said section [Code Civ. Proc., § 803] is not entirely beyond the control of a court . . . still it is clear that the power of a court to

compel him to violate his own judgment by ordering him to grant leave to commence a suit, against his own conviction and conscientious belief that such leave should not be given, should be exercised only where the abuse of discretion by the attorney-general in refusing the leave is extreme and clearly indefensible. When such an extreme case does not appear, a decree of a court compelling him to act against his judgment is erroneous, and is itself an abuse of discretion." (P. 454.)

Cases arising from comparable situations make it clear that the Attorney General need not automatically grant leave to file any kind of suit presented to him if he does not in the exercise of his discretion deem it a proper subject for litigation. Thus the Supreme Court in *Wilson* v. *Sharp* (1954) 42 Cal.2d 675 [268 P.2d 1062] held that a county counsel, in determining whether to institute a suit under Government Code section 26525, "must determine not only whether there has been a violation of law but also whether action is justified under all the facts" (p. 679) and that "[s]uch a determination necessarily requires the exercise of discretion. . . ." (P. 678.) The same issue arises as to whether a district attorney must proceed with every prosecution demanded of him. In that respect this District Court of Appeal has held that "[i]n general, mandamus will not lie to compel a district attorney to prosecute every charge of crime made to him. . . . The district attorney must be vested with discretionary power in investigation and prosecution of such charges." (*Taliaferro* v. *City of San Pablo* (1960) 187 Cal.App.2d 153, 154 [9 Cal.Rptr. 445].) We have also ruled in *Taliaferro* v. *Locke* (1960) 182 Cal.App.2d 752 [6 Cal.Rptr. 813] as to a proceeding in mandamus to compel a district attorney to prosecute an alleged crime that the involved "investigation and prosecution were matters in which the district attorney is vested with discretionary power as to which mandamus will not lie." (P. 757.)

*Wilson* v. *Sharp, supra,* 42 Cal.2d 675 and *Taliaferro* v. *City of San Pablo, supra,* 187 Cal.App.2d 153 both refer to *Boyne* v. *Ryan* (1893) 100 Cal. 265 [34 P. 707], an early California case holding that mandamus will not issue against a district attorney to require him to prosecute an action since the issuance of the writ would be "an idle thing in the absence of power to compel him to prosecute it to final determination. . . ." (P. 267.)

Cases from jurisdictions other than California recognize the inherent requirement that the issuance of the leave to sue depends upon an exercise of the Attorney General's discretion.

Indeed, in *Hermann* v. *Morlidge* (1944) 298 Ky. 632 [183 S.W.2d 807, 809], the court notes that "the attorney general, or other similarly circumstanced official, is invested with a discretion which a private citizen may not coerce nor a court control." (To the same effect: *State* ex rel. *Bennett* v. *Clarendon Independent School Dist.* (1957) 156 Tex. 542 [298 S.W. 2d 111, 117]; *State* ex rel. *Le Shure* v. *O'Hern* (Mo.App. 1941) 149 S.W.2d 914; *State* v. *Pratt* (1912) 68 Wash. 157 [122 P. 987].) In *Clarendon* the court recognized the discretionary power despite the language in the state statute which, as a quo warranto proceeding, employed the normally mandatory word "shall." ▆▆▆ The above rulings, articulating the philosophy of *Lamb,* demonstrate that the last line of section 803, stating that "the attorney-general must bring the action, whenever he has reason to believe" the usurpation has occurred, does not exclude the exercise of his discretion.

While the Attorney General argues that a court should never compel him to grant leave to sue in quo warranto, and language in certain of the above cases sustains that position, we need not make so sweeping a ruling. In accordance with the test suggested in *Lamb,* we hold that, to justify court intervention, the abuse of discretion by the Attorney General in refusing the requested leave must be extreme and clearly indefensible.

We do not find a showing of such extreme and indefensible abuse in the instant case. In the exercise of his discretion the Attorney General must essentially determine whether the public interest would be subserved by the institution of the suit. ▆▆▆ As stated in *State Railroad Com.* v. *People* (1908) 44 Colo. 345 [98 P. 7, 22 L.R.A. N.S. 810]: "Primarily, this remedy belongs to the state, in its sovereign capacity, to protect the interests of the people as a whole and guard the public welfare . . . [t]he Attorney General . . . is the proper one to determine, in the first instance, when the interests of the public justify a resort to this remedy." (P. 11 [98 P.].)

▆▆▆ The Attorney General's decision that the institution of the instant suit would not promote the public interest rests upon the following factors: (1) the suit would involve three governmental agencies in expensive litigation which presented no issue of great substance, (2) no legal protests had been filed pursuant to section 35312 of the Government Code to object to the annexation, (3) apparently the bulk of the voters and property owners in the area favored annexation,

(4) the City of Campbell alone objected to the annexation, (5) the interest of the City of Campbell represented a private position of this municipality rather than a public question of the State of California. We can understand the Attorney General's skepticism[1] as to the fulfillment of any public interest in the instant case which takes place in the course of the present-day phenomenon of an apparent aspiration of every municipality for the megalopolis. The Attorney General apparently found little justification for state expense in abetting the territorial appetite of one municipal corporation as against the other.[2] In this strange struggle of the cities the Attorney General saw no public reason to intervene under the circumstances set out above, and we cannot say that in so deciding he abused his discretion in an extreme and clearly indefensible manner.

 Appellant's first countervailing argument rests on the fact that the Attorney General conceded the presence of an issue as to the number of persons who were registered voters residing in the area, stating that this situation "presents a substantial issue of law." The Attorney General's opinion explains that, "It is possible, if not probable, that there were sufficient registered voters residing within the territory to have precluded the use of the uninhabited act by the

---

[1]The opinion of the Attorney General sets out: "Fifth, the only party seriously objecting is a neighboring city, and such cities under the annexation statutes have only limited rights clearly set forth in the code. (*E.g.*, Gov. Code §§ 35105.5, 35304.5.) . . . While we have, and will accept applications for leave to sue from neighboring cities and would grant such a city leave to sue in an appropriate case, the rights of the property owners and voters in the territory to be annexed are of greater importance. This application presents a conflict between two cities, not a struggle by property owners to nullify the improper action of an annexing city." The court in *Hubbell* v. *City of Los Angeles* (1956) 142 Cal.App.2d 1 [297 P.2d 724] calls attention to the unfortunate consequences of competition and strife between municipal corporations in the following language: "Whatever other functions they may be called upon to perform, members of a municipal council or other public body are at all times trustees of the public welfare. Obviously, such a trusteeship does not call for competition and strife between such bodies and the interested members of the public; nor between the bodies of neighboring municipalities. These salutary precepts do not appear to have been recognized or followed in the attempted annexation of the Howard Addition." (P. 5.)

[2]For a helpful analysis of the problems of municipal government, an exposition of the limitations upon independent action of municipalities and such local governing bodies and the asserted need for "the establishment in metropolitan communities of an area-wide organization or framework through which truly area-wide matters can be presented, discussed, decided and acted upon on an area-wide basis" see Report of the Governor's Commission on Metropolitan Area Problems, State of California, (December 1960). (P. 13.)

City of San Jose.'' The presence of the admitted issue, according to appellant, compels the Attorney General's presentation of that question to the court.

We do not believe, however, that the debatable issue inevitably produces the quo warranto. Indeed, the Attorney General's exercise of discretion is posited upon the existence of a debatable issue. To hold that the mere presentation of an issue forecloses any exercise of discretion would mean, in effect, that, contrary to the holding in the *Lamb* case, the Attorney General could exercise no discretion. The crystallization of an issue thus does not preclude an exercise of his discretion; it causes it.

█ Finally, appellant charges that respondent City of San Jose annexed Cherry Lane No. 1 ''in violation of an agreement, in part written and in part oral, between the City Councils of City of San Jose and City of Campbell establishing certain lines not to be crossed with annexation to either cit*ies*.'' We do not believe, however, that the ''gentlemen's agreement'' reached the status of an enforceable agreement.

City councils ordinarily cannot bind future councils. Even as to current matters they must act by resolution or ordinance. The cities passed no such resolutions or ordinances here. Moreover, as the Attorney General's opinion states as to the non-enforceability of such ''agreements,'' an ''attempt was made in the 1959 Session of the California Legislature to approve the use of such agreements, but the bill was not enacted into law. (Calif. Legis., 1959 General Session, A.B. 2240.) ''

Appellant concedes that if San Jose had followed the proper procedure and submitted the annexation proposition to the voters ''the agreement could not stultify the rights of the voters.'' Evidently a breach of the agreement could occur only as to *un*inhabited areas; since appellant argues that the annexed area was inhabited, it follows that no breach in fact occurred. The only conceivable breach thus involved an alleged violation of the annexation statutes. The sole correction of such claimed violation lies in the possibility of a finding that the Attorney General abused his discretion in denying leave to sue, not in an asserted breach of the ''gentlemen's agreement.''

The exercise of the discretion of the Attorney General in the grant of such approval to sue calls for care and delicacy. Certainly the private party's right to it cannot be absolute; the public interest prevails. The presence of an issue here does not abort the application of such discretion; the issue

generates the discretion. Only in the event of an extreme abuse of the discretion should the courts annul the Attorney General's decision. In the complex and dynamic field of municipal annexation, in a case in which other available remedies have not been pursued, and in a situation permeated with the public interest, the Attorney General's refusal to grant leave did not become an extreme abuse of discretion.

We affirm the judgment.

Bray, P. J., and Sullivan, J., concurred.