OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

| | |
|---|---|
| OPINION : | |
| : | No. 88-891 |
| of : | |
| : | MAY 31, 1989 |
| JOHN K. VAN DE KAMP : | |
| Attorney General : | |
| : | |
| CLAYTON P. ROCHE : | |
| Deputy Attorney General : | |
| : | |

---

The Lancaster Citizens For Better Government, as relators, have filed an application with this office for leave to sue Els Groves in quo warranto to test his right to continue to hold the office of councilman of the City of Lancaster. The dispute arises as the result of the maintenance of two separate residences by Mr. Groves.

CONCLUSION

We conclude that leave to sue should be denied.

I. RELATORS CONTENTIONS

The proposed complaint in quo warranto and the verified statement of facts filed by the relators set forth the following factual and legal contentions. Factually, it is pointed out that Els Groves was duly elected to the city council of the City of Lancaster on April 8, 1986 and assumed such office on April 15, 1986. It is alleged that at such time and until about February 24, 1988, Mr. Groves lived within the City of Lancaster at a particular address. It is then alleged that on or about February 24, 1988 Mr. Groves vacated his abode at that address in Lancaster and moved his family and his furniture to a home he purchased in the Rancho Vista development of the City of Palmdale, approximately one and one-half miles south of the City of Lancaster. It is alleged that on or about March 1, 1988, Mr. Groves rented an apartment in the City of Lancaster; that Department of Motor Vehicle records disclose his motor vehicles to have been registered at the Palmdale address through April 1988; that Mrs. Groves registered to vote at the Palmdale address but re-registered at the Lancaster apartment in April, 1988; and that Mr. Groves stated during a council meeting on March 21, 1988, and later in a letter to the editor of the Antelope Valley Press, that he intended to maintain a dual residence at the Palmdale home and the Lancaster apartment. Based upon the foregoing facts, relators contend that Els Groves vacated his office as city councilman pursuant to section 36502 of the Government Code and 1770, subdivision (e) of that code. The former section provides that an incumbent vacates such office "[i]f during his term of office he moves his place of residence outside the city limits or ceases to be an elector of the city." The latter section provides that an office becomes vacant if the incumbent ceases "to be an inhabitant of the . . . city for which the officer was chosen or appointed or within which the duties of his or her office are required to be discharged."

The relators urge that residence or inhabitance as used in these sections requires "legal residence" or "domicile" and not mere habitation. Accordingly they urge that pursuant to the provisions of section 244 of the Government Code, Mr. Els Groves abandoned his "legal residence" or "domicile" in Lancaster when he moved his furniture and family to Palmdale, and began living there. In this respect section 243 of the Government Code provides:

> "Every person has, in law, a residence."

Section 244 then provides in part as to residence:

> "In determining the place of residence the following rules shall be observed:

> "(a) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she return in seasons of repose;

> "(b) There can only be one residence:

> "(c) A residence cannot be lost until another is gained . . .

> "(f) The residence can be changed only by the union of act and intent. . . ."

The California Supreme Court has "recognized that these Government Code sections which use the term `residence' actually mean `legal residence' or `domicile' and . . . [has] interpreted them accordingly. . . ." (*Walters* v. *Weed* (1988) 45 Cal.3d 1, 7.). Relators therefore urge 1) that under the facts Mr. Groves demonstrated the requisite "union of act and intent" necessary to change his "legal residence" or "domicile" from Lancaster to Palmdale when he moved there with his family, and hence 2) he automatically vacated his office of city councilman by such change pursuant to section 36502 and section 1770, subdivision (e) of the Government Code.

## II. CONTENTIONS OF THE PROPOSED DEFENDANT

In his response to this application for leave to sue, Mr. Groves, the proposed defendant, contends that he at all times has remained a domiciliary and elector of the City of Lancaster and that his move to Palmdale was intended to be and has always been temporary.

In support of this, Mr. Groves points out in his statement of facts that he is a sales representative for the Rancho Vista development of the City of Palmdale. He states that he saw this development as a source of investment. Accordingly, he states that he purchased the home in Palmdale solely as an investment and moved there to be present while improvements were being made. He states that he considered it to be too expensive to retain his former abode in Lancaster while temporarily living in Palmdale; that he still owns that property (a condo) which he has rented out; and that he moved a portion of his possessions into an apartment in Lancaster, which he shares with his daughter, before moving temporarily to the Palmdale house. He also states that he has changed his voter registration and car registration to the Lancaster apartment address. He also states that he has never filed a homeowner's exemption on the Palmdale house. And as of the date of filing his response to the instant quo warranto application with this office, Mr. Groves stated that he had just sold the Palmdale house and contemplated completely moving back to Lancaster in the near future. By letter dated December 22, 1988, Mr. Groves advised us that he had actually moved to a newly purchased home in Lancaster, thus ending his dual residency.

2. 88-891

In further support of his position that he moved to Palmdale with the intent that such move was for only temporary purposes, Mr. Groves states that prior thereto he discussed the matter with the city manager, the city attorney, his son-in-law (an attorney), his fellow council members, and the League of California Cities, all of whom agreed that he could temporarily move to the Palmdale house without giving up his residence in Lancaster for purposes of retaining to his office. Additionally, Mr. Groves states that this is the fifth property he has purchased as an investment to demonstrate that this is not an unusual thing for him to do. However, he does admit that this is the first of these to which he has actually moved.

In addition to contending that, under the foregoing facts, he did not exhibit the requisite union of act and intent to change his domicile or legal residence under section 244 of the Government Code, Mr. Groves relies upon section 202 of the Elections Code, which provides:

"(a) A person who leaves his or her home to go into another state or precinct in this state for temporary purposes merely, with the intention of returning, does not lose his or her domicile.

"(b) A persons does not gain a domicile in any precinct into which he or she comes for temporary purposes merely, without the intention of making that precinct his or her home."

We have also ascertained that at all times Mr. Groves was and has been registered to vote in the city of Lancaster.

## III. THE APPLICABLE LAW

As noted at the outset, relators rely upon sections 36502 of the Government Code, as well as sections 244 and 1770, subdivision (e) of that Code, in urging that Els Groves vacated his office of city councilman. Relators are correct in their assertion that these are the main provisions to be considered herein.

Section 36502 of the Government Code now and at all times material herein provides:

"A person is not eligible to hold office as councilman, city clerk, or city treasurer unless he is at the time of assuming such office an elector of the city, and was a registered voter of the city at the time nomination papers are issued to the candidate as provided for in Section 22842 of the Elections Code.

"<u>If, during his term of office, he moves his place of residence outside of the city limits or ceases to be an elector of the city, his office shall immediately become vacant.</u>" (Emphasis added.)

Also as noted at the outset, section 244 of the Government Code provides the rules for determining "residence" which under the case law has been determined to mean "legal residence" or "domicile." Section 1770, subdivision (e) provides that loss of "legal residence" or "domicile" will constitute a vacation of office where local residence is a qualification for office.

In 1965 this office had the occasion to consider these legal provisions in a quo warranto application. By letter opinion (I.L. 65-147) we granted leave to sue to test the right of a city councilman to continue to hold office in the town of Los Altos Hills. The councilman claimed to have taken up only temporary residence in Mountain View while he searched for a new home in Los Altos Hills.

In this letter opinion we discussed at length the foregoing Government Code provisions as well as prior opinions of this office. These opinions included 35 Ops.Cal.Atty.Gen. 198 (1960) and 30 Ops.Cal.Atty.Gen. 6 (1957), both relied upon relators herein. In those opinion we had also granted leave to sue city councilmen who had removed their physical residences or abodes outside of their cities. In our 1965 letter we pointed out the basic legal and factual issues which inhere in the second paragraph of section 36502 and related provisions such as sections 244 and 1770, subdivision (e) of the Government Code. These are:

1. What is meant by the term "residence" as used in the second paragraph of section 36502. Does it mean "legal residence or domicile"? Does it mean physical habitation or abode? Or does it mean both?

2. Whether the council person in fact lost his or her "legal residence" or "domicile" within the city by moving from the city.

We further pointed out that whether the council person retains a "legal residence" or "domicile" within the city is germane not only to the possible meaning of residence in section 36502 of the Government Code, but is crucial to his or her continuing status as an "elector" of the city, an additional requirement of section 36502. Relying upon the then applicable constitutional and statutory provision, we pointed out that "residence" for purpose of being an "elector" means "domicile" (See now Cal. Const., art. II, §§ 2 and 3; Elec. Code, §§ 17, 18, 100, 200 et seq.; *Walters* v. *Week*, *supra*, 45 Cal.3d 1.)

Interestingly, we find little in the law since 1965 to modify our basic analysis set forth above. Section 36502 of the Government Code, and section 1770, subdivision (e) of the Government Code remain the same. Although the California Constitution and the Elections Code have been amended somewhat with respect to qualifications to vote, the basic requirement still is that residence for purposes of being an "elector" means "legal residence" or "domicile." Accordingly, in order to be an "elector" of a city, one must still be a domiciliary thereof.

No new cases have been decided interpreting sections 36502 and 1770, subdivision (e). The only case law of some significance appears to be *Fenton* v. *Board of Directors* (1984) 156 Cal.App.3d 1107. That case involved the question whether the director of a community service district vacated her office by taking up a physical residence outside of the district. Section 61200 of the Government Code provides that directors must "be registered electors residing within the boundaries. . ." of the district. The director had retained her voter registration within the district. The trial court and the court of appeal both determined that she was still domiciled in the district within the meaning of the section 61200 of the Government Code. However, all parties and the court agreed that the word "residing" meant "domiciled" in this case or that it was to be governed by the provisions of section 244 of the Government Code. Accordingly, the case, although involving a code section analogous to section 36502, is not clear analogous authority for the proposition that residence as used in section 36502 of the Government Code means domicile.

We have, however, just recently issued some opinions of this office where significantly the issue was whether local officials resided within the boundaries of their local agency to qualify them to hold office. We equated "residence" with "domicile" by virtue of section 244 of the Government Code. Thus in 72 Ops.Cal.Atty.Gen. 8, (1989) we denied leave to sue in quo warranto to test the right of a city councilman to hold office where he maintained two separate residences. That opinion involved not section 37502 of the Government Code, but section 34882.

Otherwise it involved issues similar to those herein.[1/] And in 72 Ops.Cal.Atty.Gen. 15 (1989) we denied leave to sue to test the right of four members of a board of directors of a county water district to hold office where they each maintained multiple residences. In that opinion the requirement was that each should be "a voter" of the district to hold office, also raising issues similar to those raised herein as to the "domicile" of the board members.

In the first cited 1989 opinion above we discussed at length the concept of "residence" or "domicile." For example, we stated at 72 Ops.Cal.Atty.Gen. at page 12:

"While Mr. Silva may have established `residency' in the City of Huron, the question becomes whether or not he is domiciled in that city pursuant to Government Code sections 34882 and 1770(e).

"The test for determining a person's domicile is physical presence plus an intention to make that place his permanent home. (*Fenton* v. *Board of Directors*, *supra*, 156 Cal.App.3d at 1116.) In applying this test, reviewing courts have looked at a number of factors in order to determine a person's domicile. (*Id.*) For example, where a person votes, acts, and declarations of the party involved and a person's mailing address. (*Id.*, citations omitted.)

"To insure that everyone has a domicile at any given time, the statutes adopt the rule that a domicile is not lost until a new one is acquired. Government Code section 244(c); *Walters* v. *Weed*, *supra*, 45 Cal.3d 1,7."

And in 72 Ops.Cal.Atty.Gen. at pp.13-14, we further elaborated on the concept of "legal residence" or "domicile" and the tests to be applied, relying heavily on *Fenton* v. *Board of Directors*, *supra*, 156 Cal.App.3d 1107: We stated in part:

"In the present application, there is evidence in the Declaration of Silva to indicate substantial personal activity in and about his Kerman home or `residence.' However, there is also significant personal activity associated with the Huron residence. While the question of domicile is a mixed question of law and fact (*Fenton* v. *Board of Directors*, *supra*, 156 Cal.App.3d at 1117), many factors enter into the equation, including where an individual is registered to vote and his or her address for mail (*Ballf* v. *Public Welfare Department* (1957) 151 Cal.App.2d 784, 788-89), where tax returns are filed (*Johnson* v. *Johnson* (1966) 245 Cal.App.2d 40, 44), where an automobile is registered (8 Ops.Cal.Atty.Gen. 221 (1946)), and where a homeowner's exemption or renter's credit is taken (Elec. Code § 211). However, the critical element is that of intent. While declarations of intent are significant, they are not determinative. The acts must be examined as well. *Mauro* v. *Dept. of Mental Hygiene* (1962) 207 Cal.App.2d 381, 389.

---

1. Government Code section 34882, applicable to a city manager forms of government, provides:

"A person is not eligible to hold office as a member of a municipal legislative body unless he is otherwise qualified, resides in the district and both resided in the geographical area making up the district from which he is elected and was a registered voter of the city at the time nomination papers are issued to the candidate as provided for in Section 22842 of the Elections Code."

"An examination of all the facts presented to us indicates that Mr. Silva intended to maintain his domicile in the City of Huron. The facts presented to us are not seriously in dispute.

". . . . . . . . . . . . . . . .

"We are also mindful of the general principle that ambiguities concerning the right to hold public office should be resolved in favor of eligibility. *Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 418."

A somewhat similar approach was taken by this office in the second 1989 opinion, cited above, with respect to the county water district directors.

IV. THE ROLE OF THE ATTORNEY GENERAL

In 72 Ops.Cal.Atty.Gen. 8, 9-10 (1989), *supra*, we summarized the role of the Attorney General in Quo Warranto matters in part as follows:

"Historically, the Attorney General has not granted leave to sue in quo warranto unless some `public purpose' would be served (e.g., 36 Ops.Cal.Atty.Gen. 317, 319 (1960); 29 Ops. Cal.Atty.Gen. 204, 208 (1957); 27 Ops.Cal.Atty.Gen. 225, 229 (1956); 26 Ops.Cal.Atty.Gen. 180, 190 (1955); 21 Ops.Cal.Atty.Gen. 197, 201 (1953).) The `public purpose' requirement has been viewed as requiring `a substantial question of law or fact which calls for judicial decision.' (25 Ops.Cal.Atty.Gen. 237, 240 (1955).) While `it is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of facts or questions of law that should be determined by a court' (25 Ops.Cal.Atty.Gen. 332, 341 (1955); 24 Ops.Cal.Atty.Gen. 146, 151-152 (1954); 19 Ops.Cal Atty.Gen. 87, 88 (1952); 17 Ops.Cal.Atty.Gen. 46, 47 (1951); 15 Ops.Cal.Atty.Gen. 62, 63 (1950)), the mere existence of a legal dispute does not establish that the public interest requires a judicial resolution of the dispute or that leave automatically should be granted for the proposed realtor to sue in quo warranto. In *City of Campbell* v. *Mosk, supra*, 197 Cal.App.2d 640, the court said:

"`We do not believe . . . that the debatable issue inevitably produces the quo warranto. Indeed, the Attorney General's exercise of discretion is posited upon the existence of a debatable issue. To hold that the mere presentation of an issue forecloses any exercise of discretion would mean, in effect, that contrary to the holding in the *Lamb* [v. *Webb* (1907) 151 Cal. 451] case, the Attorney General could exercise no discretion.

"The crystallization of an issue thus does not preclude an exercise of discretion, it causes it.

. . . . . . . . . . . . . . . . . . . . . . .

"`The exercise of the discretion of the Attorney General in the grant of such approval to sue calls for care and delicacy. Certainly the private party's right to it cannot be absolute; the public interest prevails. . . . . (197 Cal.App.2d at 650; 67 Ops.Cal.Atty.Gen. 151-154.)'"

## V. DECISION

We conclude that no substantial issue of law or fact has been raised by this application for leave to sue. We further conclude that it would not be in the public interest to grant leave to sue.

As to potential issues of law, we are involved herein with a dual residence situation. Such was not the case in our 1965 letter opinion, discussed *ante*, nor in 35 Ops.Cal.Atty.Gen. 198 (1960), *supra*, or 30 Ops.Cal.Atty. Gen. 6 (1957), *supra*. Those quo warranto applications involved councilmen who moved from their cities completely, albeit for allegedly temporary purposes. If Els Groves can be said to have retained his "domicile" or "legal residence" in Lancaster by his dual residence, then no issue of law is raised as to the interpretation of section 36502 of the Government Code. No matter what interpretation is legally to be placed upon this term "residence" in section 36502, he would meet such requirements by virtue of his dual residence. And, as noted, we have ascertained that he has always been registered to vote in Lancaster, thus verifying his status as both an "elector" and "voter at all times material herein.

Accordingly, the only possible material issue we see presented by this application is the mixed question of law and fact as to whether Els Groves retained his "domicile" or "legal residence" in Lancaster when he moved to his Palmdale house. In our view the facts as presented to us by Els Groves as well as the fact that he at all times retained his voting residency in Lancaster overwhelmingly support the view that he retained his "domicile" there. As noted by us in our recent opinion, 70 Ops.Cal.Atty.Gen. 8, 13 (1989), relying heavily on *Fenton* v. *Board of Directors*, *supra*, 156 Cal.App.3d 1107, 1117 to deny leave to sue Councilman Silva:

> "The *Fenton* case is indeed very similar to the Silva situation. The burden of proving residence is on the party alleging it. (*Catsiftes* v. *Catsiftes* (1938) 29 Cal.App.2d 207, 210.) In 8 Ops.Cal.Atty.Gen. 221 (1946), this office denied leave to sue in quo warranto under similar factual circumstances, finding that direct evidence of lack of intent to change residence, including the proposed defendant's declaration of his intent, outweighed circumstantial evidence connecting the proposed defendant to another residence. The evidence is heretofore presented appears to lead to the same conclusion. (See *Fenton* v. *Board of Directors*, *supra*, 156 Cal.App.3d 1107, 1117.)"

We believe we have the same situation herein, that is, very strong direct evidence of Els Groves intent versus only some circumstantial evidence to the contrary.

Finally, we believe that it would not be in the public interest to grant leave to sue in quo warranto. At this juncture we note this is the second quo warranto application on this issue which has been filed with this office from the City of Lancaster since February 24, 1988. The first, filed on behalf of the city itself, was withdrawn. This matter has been an issue in the city for over a year. We do not believe that we should permit the matter to continue at issue for months, or even perhaps years, unless we are of the belief that a strong case for ousting Mr. Groves exists. We believe Mr. Groves's sale of the Palmdale property and his complete return to Lancaster weakens the relator's case to the point where a successful prosecution is extremely doubtful. Accordingly, we do not believe it would be in the public interest to burden either the city or the courts with this problem, but believe that it should be considered to have become moot by Mr. Groves sale of the Palmdale home and his complete return to the City of Lancaster. (Cf. 36 Ops.Cal.Atty.Gen. 317, 319-320 (1960); 35 Ops.Cal.Atty.Gen. 115, 119 (1960).)

For the foregoing reasons, leave to sue is denied.

\* \* \* \*