TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

<table>
<tr><td>OPINION</td><td>:</td><td rowspan="2">No. 92-408</td></tr>
<tr><td></td><td>:</td></tr>
<tr><td>of</td><td>:</td><td rowspan="2">JULY 9, 1992</td></tr>
<tr><td></td><td>:</td></tr>
<tr><td>DANIEL E. LUNGREN</td><td>:</td></tr>
<tr><td>Attorney General</td><td>:</td></tr>
<tr><td></td><td>:</td></tr>
<tr><td>CLAYTON P. ROCHE</td><td>:</td></tr>
<tr><td>Deputy Attorney General</td><td>:</td></tr>
<tr><td></td><td>:</td></tr>
</table>

JOHN E. DUCKWORTH has requested that this office grant leave to sue John C. Davis in quo warranto pursuant to section 803 of the Code of Civil Procedure to test the right of Mr. Davis to hold the office of trustee of the Rim of the World Unified School District.

CONCLUSION

Leave to sue is granted to test whether the offices of trustee of the Rim of the World Unified School District and director of the Lake Arrowhead Community Services District are incompatible.

MATERIAL FACTS

At an election held in San Bernardino County on November 5, 1991, John C. Davis was a candidate for and was elected to two offices: (1) trustee of Rim of the World Unified School District ("School District") and (2) director of the Lake Arrowhead Community Services District ("Community Services District"). On December 3, 1991, he took and filed his oath of office as School District trustee. Two days later, on December 5, 1991, he took and filed his oath of office as Community Services District director. He is presently exercising the duties of both offices. The Community Services District lies entirely within the geographical boundaries of the School District. The Community Services District provides both a water supply and sanitation services to businesses and residents within its boundaries, including the School District. Two schools and a substantial portion of the School District's administrative offices are located within the boundaries of the Community Services District.

CRITERIA FOR QUO WARRANTO

Code of Civil Procedure section 803 authorizes the Attorney General to bring an action "in the name of the people . . . upon a complaint of a private person, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . ." The action authorized is "in the nature of quo warranto." (*International Assn. of Fire Fighters* v. *City of Oakland* (1985)

1.                                                                      92-408

174 Cal.App.3d 687, 693.)  The Attorney General considers the following factors in determining whether to grant leave to sue:  (1) whether the application has raised a substantial issue of law or fact and (2) whether it would be in the public interest to grant leave to sue.  (75 Ops.Cal.Atty.Gen. 8, 9-10 (1982).)

LEGAL ISSUE

The legal issue presented is whether the offices of School District trustee and Community Services District director are incompatible offices so that, upon his assumption of the office of Community Services District director, Mr. Davis resigned by operation of law the office of School District trustee.

APPLICABLE LAW

In 66 Ops.Cal.Atty.Gen. 176, 177-178 (1983) we summarized the common law rule prohibiting the simultaneous holding of incompatible offices.  We stated:

"`Offices are incompatible, in the absence of statutes suggesting a contrary result, if there is any significant clash of duties or loyalties between the offices, if the dual office holding would be improper for reasons of public policy, or if either officer exercises a supervisory, auditory, or removal power over the other.'  (38 Ops.Cal.Atty.Gen. 113 (1961).

" . . . . . . . .

"The policy set forth in *People ex rel Chapman* v. *Rapsey, supra* 16 Cal.2d 636 comprehends prospective as well as present clashes of duties and loyalties.  (See 63 Ops.Cal.Atty.Gen. 623, *supra.*)

"`. . . Neither is it pertinent to say that the conflict in duties may never arise, it is enough that it may, in the regular operation of the statutory plan . . . .'  (3 McQuillin, Municipal Corporations (3d Ed. 1973, § 12.67, p. 297.)

"`[O]nly one significant clash of duties and loyalties is required to make . . . offices incompatible . . . .'  (37 Ops.Cal.Atty.Gen. 21, 22 (1961).)  Furthermore, `[t]he existence of devices to avoid . . . [conflicts] neither changes the nature of the potential conflicts nor provides assurance that they would be employed.'  (38 Ops.Cal.Atty.Gen. 121, 125 (1961).)  Accordingly, the ability to abstain when a conflict arises will not excuse the incompatibility or obviate the effects of the doctrine.  A public officer who enters upon the duties of a second office automatically vacates the first office if the two are incompatible.  (*People ex rel. Chapman* v. *Rapsey, supra*, 16 Cal.2d 636, 644.)"

We have examined the application of the common law rule in numerous situations.  (See, e.g., 75 Ops.Cal.Atty.Gen. 10, 12-13 (1992);  73 Ops.Cal.Atty.Gen. 357, 362-363 (1990);  73 Ops.Cal.Atty.Gen. 268, 269-270 (1990);  73 Ops.Cal.Atty.Gen. 183, 183-184 (1990);  71 Ops.Cal.Atty.Gen. 39, 39-40 (1988).)

ANALYSIS

Whether the two offices at issue are incompatible need not be extensively discussed.  The precise question was analyzed recently in 73 Ops.Cal.Atty. Gen. 183 (1990).  In our prior

opinion, a community services district supplied water to a school district. We analyzed the duties of the community services district director with respect to (1) determining water rates for various users, (2) taking action to collect unpaid charges, (3) assessing penalties, (4) entering into contracts with other public entities for the installation of requisite water facilities, and (5) imposing capital facilities fees on water users and contracts with respect thereto. We also pointed out that the same person, as a school district trustee, would be involved in matters such as (1) whether to pay for or contest charges for water services, which if unpaid could become a lien upon school district property, and (2) any contract negotiations with the community services district over matters of mutual interest. Based solely upon the fact that the community services district was supplying water to the school district, we concluded that leave to sue should be granted. We stated:

> "The function specified in the CSD formation petition is to supply the inhabitants of the district with water for domestic use, irrigation, sanitation, industrial use, fire protection, and recreation. (Gov. Code, § 61600, subd. (a).) We predicate upon this function alone, without regard to the numerous others which may be assumed in the future, our determination that principal or important duties, functions, and responsibilities of the respective offices either are or might come into conflict." (*Id.* at p. 185.)

We also noted that other functions might be added by the community services district:

> "A community services district is established under the provisions of the Community Services District Law (Gov. Code, § 6100 et seq.) and may consist of designated unincorporated territory of one or more counties. (Gov. Code, §§ 61100-61102.) A district is governed by a board of three or five directors. (Gov. Code, §§ 61200, 61300.) We have observed that such districts may possess many of the rights, and perform many of the functions, normally regarded as municipal in nature. (67 Ops.Cal.Atty.Gen. 145, 148 (1984); 27 Ops.Cal.Atty.Gen. 261, 262 (1956).) These functions, which may be designated in the petition for formation (Gov. Code, § 61600), or thereafter by resolution and special election (Gov. Code, § 61601), include (a) water supply, (b) sewage disposal, (c) refuse disposal, (d) fire protection, (e) parks and recreation, (f) street lighting, (g) mosquito abatement, (h) police protection, (i) library service, (j) street maintenance, (k) construction of bridges, curbs, and other works incidental to streets, (l) conversion of utilities to underground locations, (m) ambulance service, (n) airports, and (o) transportation services. (Gov. Code, § 61600.)" (*Ibid.*)

It is apparent that the question whether to add one or more community services district functions could place an individual who is both a community services district director and a school district trustee in a role of divided duties and loyalties.

Here, the Community Services District supplies both water and sanitation services to the School District. Accordingly, the potential for a clash of duties and loyalties would appear greater than in our prior opinion.

The proposed defendant, however, seeks to avoid the filing of a quo warranto action on the basis that (1) the potential conflict is territorily insubstantial, (2) in 14 years there has never been any dispute as to water or service rates or any contracts executed to construct facilities, and (3) this application for leave to sue is brought against him by a former School District trustee for personal reasons.

We do not view the potential conflict as being territorily insubstantial. The Community Services District provides services to two schools as well as many of the School District's administrative offices. We are informed that one of the two schools is the largest elementary school in the School District and that the intermediate school receiving services has a student population second only to that of the high school.

Insofar as there have been no disputes or contracts to date between the two public entities, we consider such lack of past conflicts or negotiations to be immaterial. "`". . . Neither is it pertinent to say that the conflict in duties may never arise, it is enough that it may, in the regular operation of the statutory plan . . . .""" (71 Ops.Cal.Atty.Gen. 39, 40 (1988).)

As to the allegation that the relator may have a personal interest in this application, we note that such a factor might be a consideration *taken with others* in determining whether the public interest would be served in granting leave to sue. (See, e.g., *City of Campbell* v. *Mosk* (1961) 197 Cal.App.2d 640, 648-649; 36 Ops.Cal.Atty.Gen. 317, 320 (1960).) However, our quo warranto regulations presuppose and state that "any person" may file a quo warranto application. (Cal. Code Regs., tit. 11, § 1.) We normally do not attempt to assess the motivation of individual relators. In deciding whether to grant or deny leave to sue, we focus upon the public interest as our paramount concern. (See *City of Campbell* v. *Mosk, supra*, 197 Cal.App.2d at pp. 648-650.)

Here, in our view an individual is occupying two incompatible offices. This situation will continue for three more years unless leave to sue is granted to test the propriety of this dual office holding. To deny the application would be contrary to the public interest. Accordingly, leave to sue should be and is hereby granted.

\* \* \* \* \*