TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | |
|---|---|
| OPINION : | |
| : | No. 92-1010 |
| of : | |
| : | MARCH 3, 1993 |
| DANIEL E. LUNGREN : | |
| Attorney General : | |
| : | |
| CLAYTON P. ROCHE : | |
| Deputy Attorney General : | |
| : | |

DEBRA DORST-PORADA, RELATOR, has requested leave to sue James R. Fatland in quo warranto pursuant to section 803 of the Code of Civil Procedure to test his right to hold the office of Mayor of the City of Ontario.

CONCLUSION

Leave to sue is granted to test whether Mayor Fatland forfeited his office under the terms of Article XII, section 7 of the California Constitution.

FACTUAL ALLEGATIONS

Relator alleges that on or about July 1, 1992, Mayor Fatland, who was planning a vacation trip to Hawaii with his family, requested Hawaiian Airlines employees to upgrade two round-trip coach tickets (his and his wife's) to first class tickets without any additional charge to him. His two coach tickets were in fact upgraded by the carrier without charge to him.

Mayor Fatland asserts that he did not request Hawaiian Airlines to upgrade his tickets, but that such was done on a unilateral basis by the airline itself. This is supported by an affidavit of an official of Hawaiian Airlines who states that he was authorized for promotional purposes to grant approximately 20 first-class upgraded tickets to "high profile, prominent members of the community." The promotional activities were to generate business for the airline's new service from Ontario International Airport to Hawaii, and the official indicates that he personally knew Mayor Fatland and considered him to meet the criteria for receiving the free upgraded tickets.

Mayor Fatland states that when he learned after his Hawaiian trip that acceptance of the first-class upgraded tickets might constitute a violation of the Constitution, he paid the airline for the upgraded tickets. Mayor Fatland also states that the application for leave to sue was initiated by persons who differ with his views regarding developmental matters in the City of Ontario.

Finally, Mayor Fatland alleges that as mayor, he has no ability to aid Hawaiian Airlines, since Ontario International Airport is administered by the Los Angeles Department of Airports. In response, the relator cites numerous examples of actions the city has taken in past years

with respect to the airport itself, such as planning, construction approvals, and the setting of airport fees, all of which necessarily impact upon all airlines, including Hawaiian Airlines.

## LEGAL ISSUE PRESENTED

Article XII, section 7 of the California Constitution provides:

"A transportation company may not grant free passes or discounts to anyone holding an office in this State; and the acceptance of a pass or discount by a public officer, other than a Public Utilities Commissioner, shall work a forfeiture of that office. A Public Utilities Commissioner may not hold an official relation to nor have a financial interest in a person or corporation subject to regulation by the commission."

The legal issue presented is whether the acceptance of the two first-class upgraded tickets by Mayor Fatland without payment therefor at the time of receipt constituted acceptance of a "discount" by him within the meaning of the Constitution so as to result in his forfeiture from office.

## ANALYSIS

In determining whether to grant leave to sue, this office considers the following factors: (1) whether the application has raised a substantial issue of law or fact which a court should decide and (2) whether it would be in the public interest to grant leave to sue. (See, e.g., 75 Ops.Cal.Atty.Gen. 112, 113 (1992); 73 Ops.Cal.Atty.Gen. 357, 358 (1990).)

Section 7 of Article XII (or its predecessor, section 19 of Article XII) has been in the Constitution since its adoption in 1879. We note that the current language was adopted by the electorate in 1974, when the Legislature submitted a proposed revision to the voters that was contrary to the recommendation of the Constitutional Revision Committee. (See Cal. Const. Revision Com., Proposed Revision (1968) p. 93.)[1]

While case law is virtually nonexistent with respect to interpreting section 7 of Article XII, this office has rendered a number of opinions, both formal and informal, regarding it or its predecessor provisions. We have concluded that a court may find a forfeiture of office even though (1) the officer was completely unaware of the provision; (2) the officer had no regulatory power or other official influence over the activities of the transportation company or any other transportation company; (3) the transportation company's activities were not restricted to intrastate business, but included interstate and international operations as well; (4) the officer, upon learning of the prohibition, immediately reimbursed the carrier for the transportation received; and (5) the officer's travel was personal travel rather than official business. (See 74 Ops.Cal.Atty.Gen. 26 (1991); 67 Ops.Cal.Atty.Gen. 81 (1984); 24 Ops.Cal.Atty.Gen. 129 (1954); Indexed Letter No. 75-294 (Mar. 23, 1975); Indexed Letter No. 71-159 (Aug. 24, 1971); Indexed Letter No. 70-155 (Aug. 7, 1970); Indexed Letter No. 64-111 (June 8, 1964).)

---

[1]The committee's recommendation stated in part:

"The provisions requiring forfeiture of office for accepting passes are deleted as harsh, inflexible, and unnecessary in view of general constitutional and statutory provisions which punish misconduct in office."

In a letter opinion of March 1, 1982, we granted leave to sue two members of the Santa Monica City Council who accepted free airline tickets to London given by Laker Airlines as part of the airline's promotion of its new Los Angeles to London service. The councilmembers were unaware of section 7 of Article XII, and upon learning of the constitutional prohibition, they paid Laker Airlines for the tickets. We concluded that substantial questions of law were presented which should be decided by a court, despite the general rule that the law looks with disfavor upon forfeitures of office. (See *Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 418.)[2]

While Mayor Fatland did not receive free airline tickets, he did receive first-class tickets for the price of coach tickets. In substance, we believe this constituted a "discount" within the meaning of Article XII, section 7.

Mayor Fatland, however, attempts to fit his situation within an "exception" carved out by our opinions in interpreting section 7 of Article XII. We have indicated that the constitutional provision would not appear to be applicable where the free transportation or discount is provided to a public officer as a member of a larger group unrelated to the functions of his office. In 74 Ops.Cal.Atty.Gen. 26 (1984), we concluded that a public officer could accept first-class tickets upgraded by virtue of the airline's policy to do so for all persons who were on their honeymoon. In 67 Ops.Cal.Atty.Gen. 81 (1984), we concluded that a public officer, whose spouse was a flight attendant, could accept a free transportation pass or discount when such was offered to all spouses of flight attendants without distinction. In both instances the fact that the individual was a public officer was deemed irrelevant. The free transportation or discount was awarded by the airline because the public officer was also a member of a larger, discrete class of persons; the officer was not singled out for the pass or discount by the carrier.

We believe the situation here is distinguishable. The class at issue, "high profile, prominent citizens" of Ontario, was small in number (20), and Mayor Fatland was singled out from the general population by the Hawaiian Airlines official. Mayor Fatland met the criteria for the upgraded tickets *because of* his status as mayor. At a minimum, the application of our "exception" rule to Mayor Fatland presents substantial questions of fact and law which a court should decide.

Finally, we note Mayor Fatland's allegation that this application for leave to sue was filed against him because of the relator's political motivations. In 75 Ops.Cal.Atty.Gen. 112, 116-117 (1992), we observed in a similar situation:

> "As to the allegation that the relator may have a personal interest in this application, we note that such a factor might be a consideration *taken with others* in determining whether the public interest would be served in granting leave to sue. (See, e.g., *City of Campbell* v. *Mosk* (1961) 197 Cal.App.2d 640, 648-649; 36 Ops.Cal.Atty.Gen. 317, 320 (1960).) However, our quo warranto regulations presuppose and state that `any person' may file a quo warranto application. (Cal. Code Regs., tit. 11, § 1.) We normally do not attempt to assess the motivation of individual relators. In deciding whether to grant or deny leave to sue, we focus upon the public interest as our paramount concern. (See *City of Campell* v. *Mosk, supra,* 197 Cal.App.2d at pp. 648-650.)"

---

[2]The Santa Monica quo warranto matter was filed in court, but was settled before judgment was entered.

In sum, we believe that it would be in the public interest to have this matter presented to a court for a judicial determination of the legal issues which inhere in the wording of Article XII, section 7, and its proper application.  Accordingly, leave to sue is hereby granted.

* * * * * *