TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 24-1002 |
| of | : | |
| | : | February 12, 2026 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| RYAN B. McCARROLL | : | |
| Deputy Attorney General | : | |

DAVID E. KENNEY has applied for leave to sue MARK M. SKVARNA in quo warranto to remove him from the office of Superintendent of Schools for the Montebello Unified School District.

We conclude that the application does not raise a substantial question of law or fact that would be cognizable in an action under Code of Civil Procedure section 803. For that reason, the application for leave to sue is DENIED.

**BACKGROUND**

The California Commission on Teacher Credentialing is responsible for determining whether a person possesses the minimum qualifications needed "for entry and advancement in the education profession" in this State.[1] As its name suggests, the Commission issues various teaching credentials that allow qualified recipients to provide classroom instruction in the public school system.[2] But the Commission also issues "services" credentials that allow recipients to provide specialized services other than

_____

[1] Ed. Code, § 44225, subd. (a).

[2] Ed. Code, § 44225, subd. (b)(1)(A)-(C).

1

24-1002

classroom instruction.[3]  These services include, among other things, "school counseling, school psychology, child welfare and attendance services, and school social work."[4]

The Commission also issues administrative services credentials to individuals with qualifying experience in providing either classroom instruction or specialized services.[5] These credentials generally allow recipients to direct, coordinate, or supervise other "certificated" employees and the programs that those employees operate.[6]  So, for example, an individual who possesses an administrative credential may participate in all aspects of the relationship between the school district and its employees, including its teachers and specialized service providers.[7]  They may also participate in the development and coordination of "instructional programs" and "student support services including but not limited to extracurricular activities, pupil personnel services, health services, library services, and technology support services."[8]  And they may manage "fiscal services" at the "school site, district or county level."[9]

Although an individual may receive an administrative credential based on experience as a specialized service provider, the Education Code reserves certain high-ranking administrative positions for individuals with teaching experience.  Specifically, section 35028 states that a person "shall not be eligible to hold a position as city superintendent, district superintendent, deputy superintendent, associate superintendent, or assistant superintendent of schools unless the person is the holder of both a valid school administration certificate and a valid teacher's certificate."[10]

Here, proposed defendant Mark M. Skvarna (defendant) is currently employed as the Superintendent of Schools for the Montebello Unified School District (MUSD) in Los

[3] Ed. Code, § 44250, subd. (b); see Ed. Code, § 44225, subd. (b)(1)(D).

[4] Ed. Code, § 44266; see also Ed. Code, §§ 44267.5-44269.

[5] Ed. Code, §§ 44270-44270.5; see Cal. Code Regs., tit. 5, §§ 80054-80054.1.

[6] See Ed. Code, § 44065; Cal. Code Regs., tit. 5, § 80054.5, subd. (b); see also Ed. Code, § 22110.5 (the term "certificated" means "the holding by a person of a credential that is required by the laws of the state to be held as a condition to valid employment in the position in which the person is employed").

[7] Cal. Code Regs., tit. 5, § 80054.5, subd. (b)(2) (evaluation), (b)(4) (discipline), (b)(5) (supervision), (b)(7) (recruitment, employment, and assignment).

[8] Cal. Code Regs., tit. 5, § 80054.5, subd. (b)(1), (8).

[9] Cal. Code Regs., tit. 5, § 80054.5, subd. (b)(6).

[10] The credential requirement in Education Code section 35028 is subject to certain exceptions that are not applicable here.  For example, the credential requirement does not apply to a person who is employed as a "deputy, associate, or assistant superintendent in a purely clerical capacity."  (Ed. Code, § 35028.)

2

Angeles County. Proposed relator David E. Kenney (relator) argues that defendant is not eligible to hold this position under section 35028 because he does not possess an administrative services credential or a teaching credential. And relator posits that, because the position of district superintendent is a public office, defendant is subject to removal by way of a quo warranto action under Code of Civil Procedure section 803.

Defendant answers that he is eligible to serve as district superintendent because the MUSD Board of Education waived the credential requirements that would otherwise apply to his position. He relies on Education Code section 35029, which states in part that the governing board of a public school district "may waive any credential requirement for the chief administrative officer of the school district under its jurisdiction." And the minutes of the MUSD Board of Education's regular meeting on April 17, 2024, indicate that the Board carried a motion "pursuant to Education Code section 35029" to "waive the credential requirements of Education Code section 35028 for Mark M. Skvarna, Superintendent of Schools, also known and regarded as the Chief Administrative Officer."[11]

Relator responds that the waiver was invalid or otherwise ineffective for three reasons. First, he suggests that Education Code section 35029 does not allow the governing board of a local school district to waive the credential requirements that apply to the office of district superintendent. Second, he argues that the MUSD Board of Education did not follow the proper procedures when it granted the credential waiver in this particular case. Third, he alleges that the Board's decision was the product of certain supposed misrepresentations regarding defendant's academic degrees and employment history.

We conclude for the reasons stated below that relator has not raised a substantial question of law or fact regarding the validity or overall effectiveness of the MUSD Board of Education's decision to grant a credential waiver under Education Code section 35029 and to hire defendant as district superintendent. As such, a quo warranto action to settle defendant's legal right to hold his current office would not be in the public interest.

## ANALYSIS

Code of Civil Procedure section 803 implements the common law writ of quo warranto in California.[12] It provides in pertinent part that the Attorney General may

---

[11] Montebello Unified School Dist., Mins. of the Reg. Meeting of the Bd. of Ed. (April 17, 2024) p. 6. Defendant has also proffered that there is similar language in his employment contract, which the Board ratified during the same meeting. (*Id*. at pp. 3-6; Skvarna, Response to Application for Leave to Sue (Oct. 24, 2024) attachment 1, exhibit A.)

[12] *Daly v. San Bernardino County Bd. of Supervisors* (2021) 11 Cal.5th 1030, 1051.

3

24-1002

bring an action in the name of the People of the State of California "against any person who usurps, intrudes into, or unlawfully holds or exercises any public office."[13]  If the defendant is found guilty, the court must enter a judgment removing the defendant from office.[14]  The court may also order the defendant to pay a fine of up to $5,000.[15]

The Attorney General may bring a quo warranto action "upon his own information, or upon a complaint of a private party."[16]  Most often, a private party applies to the Attorney General for permission, or leave, to sue in the name of the People, as relator has done here.[17]  The complaint and application process ensures that the Attorney General performs a "gatekeeping" function over quo warranto litigation.[18]  Indeed, "'[t]he remedy of quo warranto belongs to the state in its sovereign capacity, to protect the interests of the state as a whole and guard the public welfare, and the Attorney General is the proper one to determine, in the first instance, when the public interests justify a resort to this remedy.'"[19]

The Attorney General has "considerable discretion" in determining whether to authorize a particular quo warranto action.[20]  And the exercise of that discretion "calls for care and delicacy" to ensure that "the public interest prevails."[21]  To that end, the Attorney General typically considers three questions:  (1) Is quo warranto the proper remedy to resolve the issues which are presented?  (2) Has the proposed relator raised a substantial question of law or fact?  (3) Would the public interest be served by judicial resolution of the question?[22]

---

[13] Code Civ. Proc., § 803.

[14] Code Civ. Proc., § 809.

[15] *Ibid.*

[16] Code Civ. Proc., § 803.

[17] Cal. Code Regs., tit. 11, § 1.

[18] *People ex rel. Internat. Assn. of Firefighters, etc. v. City of Palo Alto* (2024) 102 Cal.App.5th 602, 619.

[19] *Ibid.*, quoting *People ex rel. Conway v. San Quentin Prison Officials* (1963) 217 Cal.App.2d 182, 183.

[20] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 875; see *People ex rel. Internat. Assn. of Firefighters, etc. v. City of Palo Alto*, *supra*, 102 Cal.App.5th at p. 619.

[21] *Rando v. Harris*, *supra*, 228 Cal.App.4th at p. 878, quoting *City of Campbell v. Mosk* (1961) 197 Cal.App.2d 640, 650.

[22] *Id*. at p. 879; see 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

24-1002

**Quo Warranto Is Not Available to Litigate the Allegations Involving Defendant's Personal Background**

As mentioned, the purpose of a quo warranto action is to resolve the defendant's right to hold a public office.[23] So, when considering an application for leave to sue, we must determine whether it seeks to remove the defendant from a "public office" within the meaning of Code of Civil Procedure section 803. Although the application at issue here includes a variety of allegations, it concludes with a prayer to "prohibit Skvarna from occupying the office of Superintendent of MUSD." And it was established in 68 Ops.Cal.Atty.Gen. 337, 350 (1985) that "a district superintendent of schools is a public officer under the incompatibility of public office doctrine." It follows that a district superintendent is also a public officer for quo warranto purposes, because the Legislature has specified that the incompatibility of public office doctrine is enforceable through a quo warranto action.[24]

But the question remains whether the proffered reasons for removing defendant from office would be cognizable in a quo warranto action. As mentioned, Code of Civil Procedure section 803 authorizes a quo warranto action only in cases where the defendant "usurps, intrudes into, or unlawfully holds or exercises" a public office. Here, defendant would be "unlawfully" holding the office of district superintendent under Education Code section 35028 but for the credential waiver that he received from the MUSD Board of Education under section 35029. We must therefore determine whether the claims raised in the application for leave to sue would, if true, render the credential waiver void or otherwise ineffective as a matter of law.

Defendant does not deny that some of the claims at issue here would invalidate the credential waiver that he received from the MUSD Board of Education. In particular, the waiver would be ineffective if relator were correct in arguing that Education Code section 35029 does not allow the governing board of a local school district to waive the credential requirements for the district superintendent. So too might the waiver be null and void if the MUSD Board of Education failed to act in a sufficiently open and collaborative manner.[25] As to these claims, we therefore conclude that quo warranto is

---

[23] Code Civ. Proc., § 803; see *Wheeler v. Donnell* (1896) 110 Cal. 655, 657-658.

[24] See Gov. Code, § 1099, subd. (b) ("When two public offices are incompatible, a public officer shall be deemed to have forfeited the first office upon acceding to the second. This provision is enforceable pursuant to Section 803 of the Code of Civil Procedure").

[25] Cf. Gov. Code, § 54960.1 (legislative action that is not taken in substantial compliance with open meeting laws may be declared null and void, provided that the complaining party complies with various procedural requirements); *Daly v. San Bernardino County Bd. of Supervisors*, *supra*, 11 Cal.5th at p. 1051, fn. 11 (declining to address whether these procedural requirements apply to a quo warranto action).

24-1002

an available remedy and will proceed to discuss whether relator raises a substantial question of law or fact with respect to these claims below.

In our view, the remaining grounds for removal would not render the credential waiver void or otherwise invalid as a matter of law—at least not based on the points and authorities submitted by relator.[26] As mentioned, the application for leave to sue alleges that the MUSD Board of Education received false or otherwise misleading information regarding defendant's academic degrees and employment history when it decided to waive the credential requirements and to hire him as district superintendent. But the application does not suggest that credential waivers are available only to individuals with certain academic degrees or particular employment histories.

Instead, relator appears to argue that the alleged misinformation regarding defendant's personal background gives the MUSD Board of Education the option to terminate his employment contract. In many circumstances, a party to a contract may choose to void the contract if it can establish that the other party made a material misrepresentation of fact.[27] And defendant's contract with the MUSD Board of Education appears to allow the Board to terminate the contract for dishonesty or any other reason stated in Education Code section 44932 after giving him notice and ten days to respond.[28] But we have received nothing to suggest that the Board has attempted or even considered exercising that option. And we have no occasion to advise the Board on whether it could or should do so based on the allegations that relator has lodged against defendant.[29]

Rather, our inquiry is limited to the question of whether the allegations support a quo warranto action by the People of the State of California under Code of Civil Procedure section 803. Relator does not articulate how the contract principles discussed above would be cognizable in a quo warranto suit. For example, although he suggests that the MUSD Board of Education might have cause to terminate defendant's employment contract, he does not dispute that the contract remains in effect unless and until the Board exercises that option or the contract expires. And relator does not cite any Attorney General opinion granting leave to bring a quo warranto action for the purpose of terminating an employment contract on behalf of a separate governmental entity based on

---

[26] See Cal. Code Regs., tit. 11, § 2 (application for leave to sue in quo warranto shall include supporting points and authorities).

[27] Rest.2d, Contracts, § 164 (1981); see Civ. Code, §§ 1566-1568; CACI No. 335.

[28] Montebello Unified School Dist., Employment Agreement with Mark M. Skvarna (April 17, 2024) p. 4; see Ed. Code, § 44932, subd. (a).

[29] See Gov. Code, § 12519.

24-1002

allegations like the ones presented here. Nor does relator identify any judicial decision or other authority suggesting that quo warranto might be available in this situation.

For these reasons, it appears that the allegations involving defendant's academic degrees and employment history would not be cognizable in a quo warranto action. The application for leave to sue is therefore DENIED with respect to these allegations. We will, however, proceed to consider the remaining allegations below.

**The Governing Board of a Local School District May Waive the Credential Requirements That Would Otherwise Apply to the District Superintendent**

Having determined that two of the claims raised in the application for leave to sue would be cognizable in a quo warranto action, we next consider whether they raise a "substantial" question of law or fact.[30] Our goal here is not to resolve the merits of the proposed action.[31] But we are mindful of the general principle that "the right to hold public office is a fundamental right of citizenship that can be curtailed only if the law clearly so provides."[32]

We begin with the claim that the MUSD Board of Education did not have the authority to waive the credential requirements that apply to defendant as the district superintendent. As mentioned, Education Code section 35028 requires a district superintendent to possess both an administrative credential and a teaching credential. But section 35029 states that the governing board of a public school district "may waive any credential requirement for the chief administrative officer of the school district under its jurisdiction."

Although section 35029 does not define what it means for someone to serve as the "chief administrative officer" of a public school district, the statute has long been understood as applying to the district superintendent.[33] For example, the California Department of Education initially opposed the waiver statute on the ground that it would

---

[30] See *Rando v. Harris*, *supra*, 228 Cal.App.4th at pp. 879, 882; see *International Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 697; *City of Campbell v. Mosk*, *supra*, 197 Cal.App.2d at p. 650; 96 Ops.Cal.Atty.Gen. 48, 49 (2013).

[31] See 105 Ops.Cal.Atty.Gen. 65, 67 (2022); 95 Ops.Cal.Atty.Gen. 50, 51 (2012).

[32] *Woo v. Superior Court* (2000) 83 Cal.App.4th 967, 977, citations omitted; see *Zeilenga v. Nelson* (1971) 4 Cal.3d 716, 720 (right to hold office "either by election or appointment" is fundamental).

[33] See Grenig, West's Cal. Code Forms (5th ed. 2025) com. to Education § 35026, Form 1; Cal. Com. on Teacher Credentialing, A History of Policies and Forces Shaping Cal. Teacher Credentialing (Feb. 2011) p. 154; Com. on Cal. State Gov. Organization and Economy, A Study of the Utilization of Public School Facilities (Grades K Through 12) (July 1978) p. 12.

7

allow school boards to exempt superintendents from the "training, experience, and administrative knowledge" needed to operate a successful school district.[34]  And other commentators have cautioned school boards to "thoroughly consider all of the implications of appointing a superintendent without an educational background before determining whether or not it will require the new superintendent to have an administrative credential."[35]

We have no occasion here to consider the policy implications of giving the governing board of a public school district discretion to hire a superintendent who possesses neither an administrative credential nor a teaching credential.  Likewise, our task is not to determine whether the MUSD Board of Education reasonably exercised its discretion when hiring defendant.  Rather, our inquiry is limited to considering whether relator has raised a substantial question regarding the existence of the Board's discretion as a matter of law.  We conclude that he has not.

Our analysis begins with the language in Education Code section 35029 itself.  As mentioned, the statute allows the governing board to waive "any credential requirement" for "the chief administrative officer" of the district.  Although the statute does not define what it means for a person to serve as "the chief administrative officer," the term commonly refers to a single person who exercises the highest degree of administrative authority within an organization.[36]  And, because the statute operates as an exception to certain unspecified credential requirements, its reference to the chief "administrative" officer presumably refers to a person who would be required to possess an "administrative" services credential absent a waiver from the governing board.[37]  In other

---

[34] Dept. of Ed. Legal Office, mem. to State Superintendent of Public Instruction Max Rafferty (July 2, 1970) p. 9; attached to Letter from Superintendent Rafferty to Governor Ronald Reagan (July 23, 1970).

[35] Lewis, Recruiting and Selecting a New Superintendent (Dec. 1976) p. 6.

[36] In this context, the word "chief" generally means "accorded highest rank or office" or "of greatest importance or influence."  (Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/chief (as of Feb. 12, 2026).)  And the word "officer" commonly refers to "one who holds an office of trust, authority, or command." (Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/officer (as of Feb. 12, 2026).)  Moreover, by using the definite article "the" in reference to "the chief administrative officer," the statute suggests that there is only one such officer per district. (See *Pineda v. Bank of America* (2010) 50 Cal.4th 1389, 1396; *CD Investment Co. v. California Ins. Guarantee Assn.* (2000) 84 Cal.App.4th 1410, 1421.)

[37] See *People v. Lamas* (2007) 42 Cal.4th 516, 525 ("'[W]hen statutes are in pari materia similar phrases appearing in each should be given like meanings'").

24-1002

words, the statute presumably refers to the person who exercises the highest degree of authority over the district's employees and the programs that those employees operate.[38]

Based on that understanding of the statutory text, there is little if any doubt that a district superintendent serves as the chief administrative officer of the district. Of particular significance in this regard are the powers and duties of a district superintendent enumerated in Education Code section 35035. The statute provides that a superintendent is ordinarily responsible for preparing and revising the district's budget, preparing and revising the district's local control and accountability plan, ensuring that the local control and accountability plan is implemented, assigning and transferring teachers, entering into contracts subject to approval by the governing board, and submitting financial and budgetary reports to the governing board.[39] These powers and duties exist "in addition to other powers and duties granted to or imposed upon" the superintendent.[40] So, for example, the governing board may require the superintendent to certify actions taken by the board, to keep track of school funds, to make an annual report to the county superintendent of schools, and to make any other reports that are required by law.[41]

Based on these statutory provisions, we have said that a "district superintendent is by legislative design and common practice not only an officer of the district, but the principal officer of the district."[42] And the California Supreme Court has similarly observed that a superintendent holds the "highest" and "foremost" office in a public school district.[43] Indeed, the superintendent has "primary responsibility for representing, guiding, and administering" the district.[44] As such, the superintendent is the district's "chief executive, policy architect, and personal symbol."[45]

The history of Education Code section 35029 reinforces the conclusion that the governing board of a public school district may hire a district superintendent who lacks the credentials mentioned in section 35028, after waiving the credentials requirement. Shortly before the Legislature enacted the waiver statute as part of the Teacher Preparation and Licensing Law of 1970, the Commission on Education Reform established by Governor Reagan recommended eliminating all of the credential

---

[38] See Cal. Code Regs., tit. 5, § 80054.5; see also Ed. Code, § 44900 (referring to a school district being "under the supervision" of a chief administrative officer).

[39] Ed. Code, § 35035.

[40] *Ibid*.

[41] See Ed. Code, §§ 35026, 35250, subds. (a)-(d).

[42] 68 Ops.Cal.Atty.Gen. 337, 349 (1985).

[43] *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 976, 983.

[44] *Id*. at p. 983.

[45] *Id*. at p. 988.

9

requirements that applied to school administrators.[46]  Although the Legislature did not adopt that recommendation, it did attach two pertinent findings to the new law: (1) "highly complex, detailed, and prescriptive regulations governing the preparation and licensing of teachers and administrators frustrate imagination, innovation, and responsiveness" and (2) "the diversity of functions served by modern education require licensing regulations which are flexible, realistic, responsive, and simple."[47]

Allowing the governing board of a public school district to waive the credential requirements that would otherwise apply to the district superintendent is consistent with the Legislature's stated goals.  In particular, it gives the board flexibility to hire the candidate who, in the board's opinion, can best respond to the particular needs of the district.  So, for example, a board might grant a waiver when recruiting a superintendent who has demonstrated success in running a public school district in another state.  Alternatively, a board might grant a waiver when promoting a senior officer whose career path had not previously required a credential.[48]  Although we have no occasion to consider whether these hypothetical uses of the waiver statute would be appropriate from a policy perspective, we have little doubt that they would be consistent with the legislative findings quoted above.

Contrary to the foregoing analysis, relator suggests that Education Code section 35029 does not allow the governing board of a public school district to waive the credential requirements that would otherwise apply to the district superintendent.  Although his reasoning is not entirely clear, he appears to rely on the fact that section 35029 refers to the "chief administrative officer of the district" rather than the "district superintendent."  Indeed, the use of different words or phrases in related statutes can sometimes "suggest[] an intent to convey a different idea."[49]

But, in this instance, the Legislature may have used different language to ensure that the waiver provision applies to all school districts regardless of their administrative structure.  Indeed, the Education Code does not require each and every district to be

---

[46] Cal. Com. on Teacher Credentialing, A History of Policies and Forces Shaping Cal. Teacher Credentialing, *supra*, at pp. 133-134, 137; see Brott, Credentialing in Cal., Alternatives for Governance (Aug. 1984) p. 29.

[47] Ed. Code, former § 13102; Stats. 1970, ch. 557, § 3, pp. 1078-1079.

[48] See Ed. Code, §§ 35030, 44069, subds. (c)-(d) (credential requirements do not apply to the position of business manager as a matter of state law); see also Ed. Code, §§ 45100.5, 45103, 45256 (credential requirements do not apply to a position that is part of the "classified service," even if the position has been designated as part of the "senior management of the classified service").

[49] *National Lawyers Guild v. City of Hayward* (2020) 9 Cal.5th 488, 500; see *Rashidi v. Moser* (2014) 60 Cal.4th 718, 725.

10

administered by a superintendent; it states only that the governing board of a "school district employing eight or more teachers *may* employ a district superintendent for one or more schools."[50]  As such, the reference in section 35029 to the chief administrative officer of a public school district ensures that the waiver statute applies to all school districts, not just to those that employ a superintendent.

Relator also appears to suggest that Education Code section 35029 uses the term "chief administrative officer" in reference to the title of a specific cabinet position that reports to the district superintendent.  Although he does not identify the other cabinet members, they would presumably include the district's business manager and other senior officials whose positions do not include credential requirements.[51]  In other words, relator suggests that the chief administrative officer under section 35029 is analogous to any number of corporate officers—such as a chief financial officer, chief technology officer, or chief human resources officer—who report to the chief executive officer on a discrete aspect of the enterprise.

This argument is unpersuasive because, if the Legislature intended to refer only to a member of the superintendent's cabinet, it knew how to do so.  For example, sections 35028 and 35030 explicitly reference subordinate titles when referring to "deputy," "associate," and "assistant" superintendents.  And section 88091(c)(1) includes an explicitly subordinate description when referring to a "chief business, fiscal, facilities, or information technology adviser or administrator for the district chancellor or superintendent" of a community college district.  The fact that section 35029 does not include a similarly subordinate title or description—but instead refers to "the" "chief" administrative officer of the district—indicates that the Legislature did not intend for the statute to apply only with respect to a cabinet official who reports to the superintendent.[52]

The suggestion that section 35029 refers to a particular cabinet official who holds the title of "chief administrative officer" also lacks merit.  Unlike a district superintendent, whose statutory "powers and duties" are enumerated in section 35035, the Education Code contains no section defining the powers and duties of a "chief administrative officer."  Moreover, the Education Code does not impose any credential requirements on a position that carries the title of "chief administrative officer." Construing section 35029 to apply only to the named position of "chief administrative officer" would therefore render the section a nullity.  Our interpretation, in contrast,

---

[50] Ed. Code, § 35026, italics added.

[51] See *ante*, fn. 48.

[52] See *ante*, fn. 36.

allows the school board to waive the credential requirement for a district superintendent that appears in the immediately preceding statute.[53]

Finally, we recognize that the longstanding interpretation of the waiver provision in Education Code section 35029 creates a slight redundancy in a different chapter of the Code. Specifically, section 44900 refers to situations in which an employee transfers to a district that is "under the supervision of the same chief administrative officer or district superintendent."[54] The reference to a district superintendent is redundant to the extent that a superintendent is the chief administrative officer of the district. And, as a general rule, "'we must avoid interpretations [of statutes] that would render related provisions unnecessary or redundant.' But a canon of construction cannot supersede the Legislature's clear intent."[55] And, in this instance, the redundancy serves the useful purpose of illustrating what it typically means for a district to be under the supervision of a chief administrative officer.[56]

For the foregoing reasons, relator has not raised a substantial question regarding the longstanding view that Education Code section 35029 allows the governing board of a public school district to waive the credential requirements that would otherwise apply to the position of district superintendent.

**The MUSD Board of Education Followed the Necessary Procedures**

Relator argues that, even if the governing board of a local school district has discretion to waive the credential requirements for the district superintendent, the MUSD Board of Education did not exercise that discretion in a sufficiently open and collaborative manner in the present case. He also complains that the Board did not follow the "merit system" that the district uses to create and fill positions that are not subject to credential requirements. But, based on the information presented to us, there

---

[53] Cf. *McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213, 227 (when construing statutes, courts may consider "the structure of the statutory scheme").

[54] See Ed. Code, § 44900 ("Any certificated employee having permanent classification in a district, who is granted a leave of absence and transfers to another district which is under the supervision of the same *chief administrative officer or district superintendent* as the district from which the employee is on leave, may acquire permanent classification in the district to which he transferred if he is employed for a second year in that district, at which time his permanent classification in the district from which he transferred shall expire" (italics added)).

[55] *People ex rel. Garcia-Brower v. Kolla's, Inc.* (2023) 14 Cal.5th 719, 731, citation omitted; see *People v. Raybon* (2021) 11 Cal.5th 1056, 1070, fn. 10.

[56] See *Doe v. Boland* (6th Cir. 2012) 698 F.3d 877, 881; see also *Freeman v. Quicken Loans, Inc.* (2012) 566 U.S. 624, 635.

does not appear to be a substantial question of law or fact regarding the sufficiency of the procedures that the MUSD Board of Education used to hire defendant.

The California Constitution guarantees "public access to the meetings of public bodies and the writings of public officials and agencies."[57] To that end, the governing board of a local school district must comply with the Ralph M. Brown Act.[58] As such, the board is generally obliged to give the public notice and an opportunity to attend every meeting and to comment on every item of business.[59] And, although the Brown Act allows the board to discuss certain employment matters in closed session, the board must ratify a superintendent's contract in open session.[60]

Here, relator does not suggest that the MUSD Board of Education violated any of these rules. As mentioned, the Board carried a motion during an open session of its regular meeting on April 17, 2024, to "waive the credential requirement of Education Code section 35028 for Mark M. Skvarna, Superintendent of Schools, also known and regarded as the Chief Administrative Officer."[61] The Board ratified its employment agreement with defendant during the same meeting.[62] And relator has not provided us with anything to suggest that the Board denied any member of the public an opportunity to attend the meeting and to comment on the motions to grant a credential waiver and to ratify defendant's employment contract.

Instead, relator points to Education Code section 33050, which requires the governing board of a local school district to follow certain procedures before it asks the State Board of Education to waive part of the Education Code. But those procedures are inapposite here, because the MUSD Board of Education did not request a waiver from the State Board of Education. As discussed, the MUSD Board invoked section 35029, which allows a "local" governing board to waive any credential requirement for the chief administrative officer of the school district under its jurisdiction. And section 33050 says nothing about a local governing board needing to ask the State Board for approval of a waiver, either before or after the fact.

Equally unavailing is relator's complaint that the MUSD Board of Education did not follow the "merit system" when it hired defendant. The merit system is designed to

---

[57] Cal. Const., art. I, § 3, subd. (b)(7); see *id*., § 3, subd. (b)(1).

[58] Cal. Const., art. I, § 3, subd. (b)(7); see Gov. Code, § 54952.

[59] Gov. Code, §§ 54954.2, 54954.3, subd. (a).

[60] Gov. Code, §§ 53262, subd. (a), 54953, subd. (c)(3).

[61] Montebello Unified School Dist., Mins. of the Reg. Meeting of the Bd. of Ed. (April 17, 2024) p. 6.

[62] *Id*. at pp. 3-6.

24-1002

ensure "the selection and retention of employees upon a basis of merit and fitness."[63]  To those ends, the merit system applies to "employment applications, examinations, eligibility, appointments, promotions, demotions, transfers, dismissals, resignations, vacations, job specifications, and performance evaluations, among other matters."[64]  But the merit system does not apply to certificated positions.[65]  Here, the position of district superintendent is doubly certificated because it generally requires both a teaching credential and an administrative services credential.[66]  And, although the MUSD Board of Education waived the credential requirements in this particular case, Education Code section 35029 expressly states that the recipient of a credential waiver under that statute shall not be subject to the merit system.[67]

We do not mean to suggest that the procedures by which the governing board of a local school district selects the superintendent are unimportant.  Far from it.[68]  Our conclusion here is merely that relator has not raised a substantial question of law or fact regarding the procedures that the MUSD Board of Education used to fill the position of district superintendent in this particular case.

**Granting the Application Would Not Serve the Public Interest**

The final step in considering an application for leave to sue in quo warranto is to determine whether the public interest would be served by a judicial resolution of the questions presented by the relator.  Here, in light of our conclusion that none of the claims raised in the application presents a substantial question of law or fact, it follows that it would not serve the public interest to authorize the proposed action.[69]  Indeed, granting leave to sue on insubstantial claims would conflict with the settled principle stated above that "the right to hold public office is a fundamental right of citizenship that can be curtailed only if the law clearly so provides."[70]

---

[63] Ed. Code, § 45260, subd. (a); see 73 Ops.Cal.Atty.Gen. 69, 70 (1990).

[64] 73 Ops.Cal.Atty.Gen., *supra*, at p. 70.

[65] See Ed. Code, §§ 45103, subd. (a), 45256, subd. (b)(1), 45260; MUSD Personnel Commission Rules and Regulations, rules 1.1.1, 1.1.6.

[66] Ed. Code, § 35028.

[67] Ed. Code, § 35029 ("No individual serving as the chief administrative officer of a school district shall be subject to the provisions of the merit system specified in [the Education Code] or any other similar merit system").

[68] See *Caldwell v. Montoya*, *supra*, 10 Cal.4th at p. 983; Lewis, Recruiting and Selecting a New Superintendent, *supra*, at p. 1.

[69] 106 Ops.Cal.Atty.Gen. 1, 9 (2023); see 101 Ops.Cal.Atty.Gen. 76, 79-80 (2018).

[70] *Woo v. Superior Court*, *supra*, 83 Cal.App.4th at p. 977, citations omitted.

24-1002

**CONCLUSION**

For all of the reasons stated above, the application for leave to sue in quo warranto is DENIED.